# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina, and SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING & REGULATION,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, in her official capacity as Acting Secretary of Labor; OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION; and DOUGLAS PARKER, in his official capacity as Assistant Secretary for Occupational Safety and Health,<br><br>*Defendants.* | Civil Action No.: 3:23-cv-01038-SAL<br><br>**Complaint**<br>**for Declaratory and Injunctive Relief** |

**COME NOW** Plaintiffs Henry McMaster, in his official capacity as Governor of the State of South Carolina, and the South Carolina Department of Labor, Licensing & Regulation ("LLR") (collectively, "Plaintiffs"), by and through the undersigned counsel, complaining of Defendants United States Department of Labor; Julie A. Su, in her official capacity as Acting Secretary of Labor; Occupational Safety and Health Administration; and Douglas Parker, in his official capacity as Assistant Secretary for Occupational Safety and Health (collectively, "Defendants"), who bring this action to challenge the requirement that the South Carolina State Plan increase its civil penalties to match the increased federal civil penalties based on Defendants' interpretation of 29 U.S.C. § 667(c)(2), 29 C.F.R. § 1902.4(c)(2)(xi), and 29 C.F.R. § 1902.37(b)(12) in Department of Labor Federal Civil Penalties Inflation Adjustment Act Catch-Up Adjustments, 81 Fed. Reg. 43,430 (July 1, 2016) ("2016 Interim Final Rule"), and Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2017, 82 Fed. Reg. 5373 (Jan.

18, 2017) ("2017 Adjustment"), as requiring the South Carolina State Plan to increase its civil penalties to match the increased federal civil penalties that the Occupational Safety and Health Administration has increased annually since 2016 under the Federal Civil Penalties Inflation Adjustment Act of 2015, Pub. L. 114-74, Title VII, 129 Stat. 584, 599 (Nov. 2, 2015) ("2015 Federal Penalties Act"). Plaintiffs hereby demand judgment and injunctive relief against Defendants as requested in this Complaint and, in support thereof, allege and say as follows:

## PARTIES AND JURISDICTION

1. Henry McMaster is Governor of the State of South Carolina and brings this suit in his official capacity.

2. Governor McMaster is the "Chief Magistrate" of South Carolina with "supreme executive authority" in the State, S.C. Const. art. IV, § 1, and he is charged with the constitutional duty to "take care that the laws be faithfully executed," *id.* art. IV, § 15. The Governor has authority over Executive Branch and Cabinet agencies, including specific authority with respect to LLR. *See* S.C. Code Ann. § 1-30-10; *id.* § 40-1-40(D). Governor McMaster has an interest in ensuring that all state laws, including the South Carolina Constitution and Code of Laws, are duly and faithfully executed, rather than subverted or commandeered through federal overreach.

3. LLR is a department within the executive branch of state government, *id.* § 1-30-10(A)(12), and the Governor's Cabinet, and LLR's director "supervise[s] the department under the direction and control of the Governor and shall exercise other powers and perform other duties as the Governor requires," *id.* § 40-1-40(D).

4. LLR administers South Carolina's state OSHA plan ("State Plan").

5. The United States Department of Labor was created in 1913, *see* Act of Mar. 4, 1913, 37 Stat. 736, and serves to foster, promote, and develop the welfare of the wage earners, job

seekers, and retirees of the United States; improve working conditions; advance opportunities for profitable employment; and assure work-related benefits and rights.

6. Julie A. Su serves as the Acting Secretary of Labor and is sued in her official capacity.

7. The Occupational Safety and Health Administration ("OSHA") was created in 1971 and seeks to ensure safe and healthful working conditions for workers by setting and enforcing standards and by providing training, outreach, education, and assistance.

8. Douglas Parker serves as the Assistant Secretary for Occupational Safety and Health and is sued in his official capacity.

9. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under federal law.

10. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 121, and Rule 3.01 of the Local Civil Rules (D.S.C.) because Plaintiffs are located in this District and Division and because a substantial portion of the wrongs, transactions, and acts complained of herein occurred in this District and Division.

## FACTUAL BACKGROUND

### A. The OSH Act

11. Congress enacted the Occupational Safety and Health Act of 1970, Pub. L 91-596, 84 Stat. 1590 (Dec. 29, 1970) ("OSH Act").

12. As part of the OSH Act, the Secretary of Labor is required to promulgate standards for safety and health in workplaces. *See* 29 U.S.C. § 655.

13. The OSH Act imposes civil and criminal penalties for violations of these standards. *See id.* § 666.

14. The OSH Act also gives the Secretary of Labor the authority to promulgate rules and regulations to carry out his responsibilities under the Act. *See id.* § 657(g)(2).

15. OSHA was created to implement the requirements of the OSH Act and to ensure safe and healthful working conditions for workers by setting and enforcing standards and by providing training, outreach, education, and assistance.

16. Under the OSH Act, States can allow the federal government to regulate and enforce workplace safety standards in the State directly, or States can submit a state-specific plan for the development and enforcement of state safety and health standards that are at least as effective as the federal standards. *See id.* § 667; *see also* 29 C.F.R. § 29.1902.1 *et seq.* (providing criteria and procedure for approval of state plans).

**B.     Federal civil penalties**

17. The OSH Act established the original amounts of federal civil penalties. *See* OSH Act, § 17, 84 Stat. at 1606–07.

18. The maximum amounts of federal civil penalties in the OSH Act were amended in 1990. *See* Omnibus Reconciliation Act of 1990, Pub. L. 101-508, Title III, § 3101, 104 Stat. 1388, 1388-29 (Jan. 23, 1990).

19. The maximum amounts of federal civil penalties in the OSH Act have remained unchanged since 1990. *See* 29 U.S.C. § 666.

20. Congress passed, and the President signed into law, the 2015 Federal Penalties Act.

21. The 2015 Federal Penalties Act required OSHA to make a one-time adjustment to the amounts of federal civil penalties "through an interim final rulemaking." Pub. L. 114-74, Title VII, § 701(b)(1)(D), 129 Stat. at 599.

22. OSHA issued that one-time adjustment in the 2016 Interim Final Rule.[*]

23. Current federal civil penalties are found at 29 C.F.R. § 1903.15(d).

24. The 2023 Adjustment increased federal civil penalties to $156,259 (up from $70,000 in 2015) and $15,625 (up from $7,000 in 2015). *See* 88 Fed. Reg. at 2220.

C. **Federal law and regulations related to state civil penalties**

25. Among other things, a state plan must provide "for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated" by OSHA. 29 U.S.C. § 667(c)(2).

26. In determining whether a state plan should be approved, the Assistant Secretary considers whether the proposed plan includes "penalties in a manner at least as effective as under the Federal program including the proposing of penalties for first instance violations and the consideration of factors comparable to those required to be considered under the Federal program." 29 C.F.R. § 1902.37(b)(12).

---

[*] After that one-time adjustment in the 2016 Interim Final Rule, the 2015 Federal Penalties Act also required OSHA to make annual adjustments to the amounts of federal civil penalties. *See* Pub. L. 114-74, Title VII, § 701(b)(1)(A), 129 Stat. at 599. These annual adjustments for inflation to federal civil penalties are exempt from 5 U.S.C. § 553's notice-and-comment requirements. *See id.* OSHA has published such annual adjustments to federal civil penalties every year since 2017. *See* Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2023, 88 Fed. Reg. 2210 (Jan. 13, 2023); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2022, 87 Fed. Reg. 2328 (Jan. 14, 2022); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2021, 86 Fed. Reg. 2964 (Jan. 14, 2021); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2020, 85 Fed. Reg. 2292 (Jan. 15, 2020); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2019, 84 Fed. Reg. 213 (Jan. 23, 2019); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2018, 83 Fed. Reg. 7 (Jan. 2, 2018); 2017 Adjustment; 2016 Interim Final Rule.

27. Federal regulations originally required only that a state plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those provided in the Act." State Plans for the Development and Enforcement of State Standards, 36 Fed. Reg. 20,751, 20,754 (Oct. 29, 1971) (codified at 29 C.F.R. § 1902.4(c)(2)(xi)).

28. OSHA amended 29 C.F.R. § 1902.4(c)(2)(xi) as part of the 2016 Interim Final Rule to add "and in 29 CFR 1903.15(d). *See* 81 Fed. Reg. at 43,439.

29. This 2016 amendment to § 1902.4(c)(2)(xi) was adopted as an interim final rule, without any notice-and-comment process under 5 U.S.C. § 553.

30. Section 1902.4(c)(2)(xi) now requires that a state plan must "[p]rovide[] effective sanctions against employers who violate State standards and orders, such as those set forth in the Act, *and in 29 CFR 1903.15(d)*." (emphasis added).

31. The 2016 Interim Final Rule contained no explanation for why a state plan would not be effective if state civil penalties were not identical to the federal civil penalties.

32. Nevertheless, in the 2016 Interim Final rule, OSHA stated that state plans must "increase their penalties to reflect the federal penalty increases at the state levels in order to maintain this 'at least as effective' status." 81 Fed. Reg. at 43,446.

33. OSHA further declared in the 2016 Interim Final rule that "State Plans will also be required to increase their penalties regularly in the future to maintain at least as effective penalty levels." *Id.* at 43,447.

34. The 2016 Interim Final Rule was a final agency action that marked the conclusion of OSHA's decisionmaking process with respect to updating the penalties.

35. The 2016 Interim Final Rule created an obligation from which legal consequences would flow to state plans, up to and including revocation of a state plan's final approval.

6

### D.     The South Carolina State Plan

36.     South Carolina chose to create the State Plan.

37.     The State Plan received initial approval in 1972, certification in 1976, and final approval in 1987.

38.     The South Carolina State Plan is administered by LLR.

39.     LLR has successfully run the South Carolina State Plan for more than five decades.

40.     South Carolina's civil penalties have always been established by statute and are set at $70,000 and $7,000 depending on the type of violation. *See* S.C. Code Ann. § 41-15-320.

41.     LLR cannot change the State Plan's civil penalty amounts because only the South Carolina General Assembly may change provisions in the South Carolina Code of Laws.

42.     In 2017, 2018, 2019, 2020, and 2021, OSHA purported to require that state plans increase state civil penalty amounts but OSHA did not impose any consequence on the South Carolina State Plan related to the fact that the General Assembly did not amend section 41-15-320 to adopt increased penalties.

43.     On August 4, 2022, OSHA issued the FY 2021 Comprehensive Federal Annual Monitoring and Evaluation ("FAME") Report for the State Plan.

44.     The 2021 FAME Report includes a finding that the "State Plan has failed to adopt OSHA's initial FY 2016 maximum and minimum penalty increase and subsequent annual penalty amount increases." 2021 FAME Report, at 18.

45.     This is the first time OSHA has made the State Plan's lack of success to raise its civil penalties to match the federal civil penalties a "finding" in a FAME Report.

46.     Findings in a FAME Report are significant because they are "limited to those issues that warrant corrective action by the State Plan to ensure it is [at least as effective]" as the federal

7

standards. OSHA, *State Plan Policies and Procedures Manual* 74 (May 6, 2020), https://tinyurl.com/2p93wtfv.

47. South Carolina's penalties are set by statute, and the General Assembly has not amended that statute since 1991. *See* 1991 S.C. Acts No. 25; S.C. Code Ann. § 41-15-320.

48. The same day that OSHA issued the 2023 Adjustment, OSHA directed the State Plan to declare by March 15, 2023, whether the State Plan would adopt the new federal civil penalty amounts as the amounts for state civil penalties.

49. OSHA has further demanded that the State Plan increase the state civil penalties to match the federal civil penalties by July 15, 2023.

## CAUSES OF ACTION

### COUNT ONE
**(Declaratory Judgment – 29 U.S.C. § 667(c)(2) does not permit Defendants to require state civil penalties to match federal civil penalties)**

50. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

51. Section 667(c)(2) requires that state plans provide "for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and enforcement of which standards) are or will be *at least as effective* in providing safe and healthful employment and places of employment as the standards promulgated under section 655 of this title which relate to the same issues." (Emphasis added).

52. "Effective," as used in § 667(c)(2), does not mean "identical."

53. Defendants' reading of § 667(c)(2) as requiring state plans have civil penalties that are identical to or at least as great as federal civil penalties is inconsistent with the statute.

8

## COUNT TWO
### (Declaratory Judgment – 29 C.F.R. § 1902.4(c)(2)(xi) does not require state civil penalties to match federal civil penalties)

54. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

55. Section 1902.4(c)(2)(xi) requires that a state plan must "[p]rovide[] *effective* sanctions against employers who violate State standards and orders, *such as* those set forth in the Act, and in 29 CFR 1903.15(d)." (Emphasis added).

56. "Effective," as used in § 1902.4(c)(2)(xi), does not mean "identical."

57. "Such as" is a "nonexclusive" term. *Stewart v. Abend*, 495 U.S. 207, 236–37 (1990).

58. Because the penalties "set forth in the Act, and in 29 CFR 1903.15(d)" are nonexclusive examples of effective penalties, there may be other types of effective penalties that would comply with the requirement of § 1902.4(c)(2)(xi).

59. Even if Defendants had the authority under the OSH Act to require the State Plan to have civil penalties that are identical to or at least as great as federal civil penalties, § 1902.4(c)(2)(xi) does not require the State Plan have civil penalties that are identical to or at least as great as federal civil penalties.

## COUNT THREE
### (Declaratory Judgment – 29 C.F.R. § 1902.37(b)(12) does not require state civil penalties to match federal civil penalties)

60. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

61. Section 1902.37(b)(12) includes as a factor for determining if a state plan includes the required criteria and indices of effectiveness that the Assistant Secretary must consider whether the plan includes "penalties in a manner at least as effective as under the Federal program,

9

including the proposing of penalties for first instance violations and the consideration of factors comparable to those required to be considered under the Federal program."

62.  "Effective," as used in § 1902.37(b)(12), does not mean "identical."

63.  Even if Defendants had the authority under the OSH Act to require the State Plan to have civil penalties that are identical to or at least as great as federal civil penalties, § 1902.37(b)(12) does not require the State Plan have civil penalties that are identical to or at least as great as federal civil penalties.

## COUNT FOUR
### (Declaratory Judgment – Violation of 5 U.S.C. § 706(2)(A))

64.  Plaintiffs incorporate the preceding paragraphs as if fully set forth here and assert this claim in the alternative, in case the Court concludes that § 667(c)(2), § 1902.4(c)(2)(xi), or § 1902.37(b)(12) do permit Defendants to require and Defendants have in fact required state plans to have civil penalties that are identical to or at least as great as federal civil penalties.

65.  Agency action cannot survive if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

66.  An agency's rulemaking "must give adequate reasons for [the agency's] decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

67.  The 2016 Interim Final Rule includes only three discussions of state plans. *See* 81 Fed. Reg. at 43,438–39, 43,445–46, 43,447.

68.  These discussions include nothing about how § 667(c)(2), § 1902.4(c)(2)(xi), or § 1902.37(b)(12) require state plans to have civil penalties that are identical to or at least as great as federal civil penalties.

69.  The only purported justification offered anywhere in the 2016 Interim Final Rule for requiring state plans to adopt civil penalties that are identical to or at least as great as federal

10

civil penalties is Defendants' assertion that increased penalties will have a greater deterrent effect. *See* 81 Fed. Reg. at 43,445.

70. This simplistic and conclusory claim ignores the fact that diligent administration and enforcement by state plans can still result in "safe and healthful employment and places of employment" as federal standards, even where state civil penalties are not identical to federal civil penalties, as South Carolina workplaces have demonstrated since 2016, during which time the state civil penalties have been lower than federal civil penalties but South Carolina workplaces have reported fewer workplace injuries and illnesses than the national average, based on data from the Bureau of Labor Statistics.

71. Defendants did not consider, for example, varying costs-of-living across the country and how the power of $100 (or any other amount of money) varies in California, New York, and South Carolina.

72. Defendants also did not consider how other enforcement structures, even with lower civil penalties, result in equally safe and healthy workplaces as the federal standards and enforcement structures do.

73. Even if the 2015 Federal Penalties Act gave Defendants the authority to amend (or reinterpret) federal regulations to require that state plans have civil penalties that were identical to or greater than federal civil penalties, without any further explanation of why state civil penalties must be identical to or greater than federal civil penalties, the 2016 Interim Final Rule is arbitrary and capricious.

**COUNT FIVE**
**(Declaratory Judgment – Violation of Executive Order 13,132)**

74. Plaintiffs incorporate the preceding paragraphs as if fully set forth here and assert this claim in the alternative, in case the Court concludes that § 667(c)(2), § 1902.4(c)(2)(xi), or

§ 1902.37(b)(12) do permit Defendants to require and Defendants have in fact required state plans to have civil penalties that are identical to or at least as great as federal civil penalties.

75. Executive Order 13,132 provides that because "our constitutional system encourages a healthy diversity in the public policies" and the States "are free to experiment with a variety of approaches to public issues," agencies must "consult with appropriate State . . . officials to determine whether Federal objectives can be attained by other means" than federal mandates and must "encourage States to develop their own policies to achieve program objectives." 64 Fed. Reg. 43,255, 43,256 (Aug. 4, 1999).

76. Despite asserting that "State Plans will . . . be required to increase their penalties regularly in the future to maintain at least as effective penalty levels," the 2016 Interim Final Rule asserts that the Interim Final Rule "does not have substantial direct effects on the states." 81 Fed. Reg. at 43,447.

77. The 2016 Interim Final Rule does not give sufficient consideration to federalism or the States' role as laboratories of democracy and ability to experiment with alternative penalty structures that promote sufficient compliance such that state plans "at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 655 of this title which relate to the same issues." 29 U.S.C. § 667(c)(2).

### COUNT SIX
### (Declaratory Judgment – 29 C.F.R. § 1902.4(c)(2)(xi) was illegally amended in the 2016 Interim Final Rule)

78. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

79. A reviewing court "shall" "hold unlawful and set aside agency action" that was taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

80. A reviewing court "shall" "hold unlawful and set aside agency action" that was taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

81. The 2015 Federal Penalties Act required OSHA, as a federal agency, to make a one-time adjustment to the amounts of federal civil penalties "through an interim final rulemaking." Pub. L. 114-74, Title VII, § 701(b)(1)(D), 129 Stat. at 599.

82. OSHA stated that the 2015 Federal Penalties Act "provide[d] a clear formula for adjustment of the civil penalties, leaving little room for discretion." 81 Fed. Reg. at 43,430–31.

83. The addition of 29 C.F.R § 1903.15(d) in the section of the federal regulation that applies to state plans, § 1902.4(c)(2)(xi), is not the adjustment of any federal civil penalties.

84. Defendants' addition of 29 C.F.R § 1903.15(d) in § 1902.4(c)(2)(xi) was not permitted by the 2015 Federal Penalties Act.

85. Defendants' amendment of § 1902.4(c)(2)(xi) to add 29 C.F.R § 1903.15(d) violated 5 U.S.C. § 553's notice-and-comment requirement.

**COUNT SEVEN**
**(Declaratory Judgment – Unlawfulness of Annual Adjustments**
**Being Forced on the State Plan)**

86. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

87. A reviewing court "shall" "hold unlawful and set aside agency action" that was taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

88. A reviewing court "shall" "hold unlawful and set aside agency action" that was taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

13

89. The 2016, 2017, 2018, 2019, 2020, 2021, 2022, and 2023 Adjustments demand that the State Plans increase its civil penalties, based on 29 U.S.C. § 667(c)(2), 29 C.F.R. § 1902.4(c)(2)(xi), and 29 C.F.R. § 1902.37(b)(12).

90. 29 U.S.C. § 667(c)(2), 29 C.F.R. § 1902.4(c)(2)(xi), and 29 C.F.R. § 1902.37(b)(12) do not require that state civil penalties be identical to or greater than federal civil penalties, and Defendants' attempt to force the State Plan to increase its civil penalties based on these provisions is in excess of Defendants' authority.

91. Any attempt to force these annual adjustments on the State Plan is in excess of Defendants' authority under the 2015 Federal Penalties Act, the OSH Act, and federal regulations is in excess of the statutory authority and without the observance of the procedure required by law.

## COUNT EIGHT
### (Injunctive Relief)

92. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

93. Plaintiffs will suffer an irreparable injury without an injunction because Defendants can use their erroneous interpretation of § 667(c)(2), § 1902.4(c)(2)(xi), or § 1902.37(b)(12) and the annual adjustments to attempt to revoke approval of the State Plan.

94. Plaintiffs have no adequate remedy at law.

95. The balance of the hardships favors Plaintiffs because Plaintiffs risk losing the State Plan without an injunction, whereas Defendants will merely have to comply with the law if an injunction is entered.

96. A permanent injunction would not disserve the public interest because it would simply require Defendants to comply with federal law and protect the State's sovereignty.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request the Court:

A. Declare that the OSH Act, 29 U.S.C. § 667(c)(2), does not require the State Plan to have civil penalties that are identical to or at least as great as federal civil penalties and does not give Defendants the authority to require the State Plan to have civil penalties that are identical to or at least as great as federal civil penalties;

B. Declare that 29 C.F.R. § 1902.4(c)(2)(xi) does not require the State Plan to have civil penalties that are identical to or at least as great as federal civil penalties;

C. Declare that 29 C.F.R. § 1902.37(b)(12) does not require State Plan to have civil penalties that are identical to or at least as great as federal civil penalties;

D. Declare that the 2016 Interim Final Rule violates 5 U.S.C. § 706(2)(A) and is arbitrary and capricious because the 2016 Interim Final Rule does not sufficiently explain why the State Plan must have civil penalties that are identical to or at least as great as federal civil penalties to be at least as effective as federal standards in providing safe and healthful employment and places of employment;

E. Declare that the 2016 Interim Final Rule violated Executive Order 13,132 by failing to give the required consideration to federalism and explain why States should not have the flexibility to experiment with alternative penalty structures that promote sufficient compliance such that state plans at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 655 of Title 29 which relate to the same issues;

F. Declare that the 2016 Interim Final Rule was unlawfully amended to add the reference to 29 C.F.R. § 1903.15(d);

15

G. Declare that Defendants' assertions in annual adjustments every year since 2016 that the State Plan must increase state civil penalties and Defendants' recent attempts to enforce such a directive are in excess of Defendants' authority and without observance of the procedure required by law;

H. Permanently enjoin Defendants from:

　　i. Requiring the State Plan to impose or enforce civil penalties identical to the federal penalties provided in any adjustment from 2016 to 2023, or any future similar adjustments to federal civil penalties; and

　　ii. Publishing in the Federal Register any proposal to reconsider and revoke OSHA's final approval of South Carolina's State Plan or otherwise taking any adverse action against the State Plan based in any way on the State Plan having civil penalties that are not identical to or greater than federal civil penalties; and

I. Grant any further relief the Court deems equitable and just.

Respectfully submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Senior Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov

*Counsel for Governor McMaster*

s/Robert E. Horner
Robert E. Horner (Fed Bar No. 7872)
S.C. Dep't of Labor, Licensing & Regulation
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor, Licensing & Regulation*

March 14, 2023
Columbia, South Carolina

17