**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| HENRY MCMASTER, in his official capacity as Governor of South Carolina, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-1038-SAL |

## DEFENDANTS' MOTION TO DISMISS

Defendants U.S. Department of Labor; Julie A. Su, in her official capacity as the Acting Secretary of Labor; the Occupational Safety and Health Administration ("OSHA"); and Douglas Parker, in his official capacity as Assistant Secretary for Occupational Safety and Health (collectively "Defendants"), hereby move to dismiss Plaintiff's Complaint, ECF No. 1.

# TABLE OF CONTENTS

INTRODUCTION................................................................................................... 1

BACKGROUND .................................................................................................... 3

    A.  The Occupational Safety and Health Act. ..................................................... 3

    B.  South Carolina's State Plan and OSHA's Regulations. ............................... 4

    C.  Recent Adjustments to OSH Act Civil Penalties and OSHA Regulations. 7

    D.  The Parties' Dealings Since the July 2016 Amendment to 29 C.F.R.
        § 1902.4(c)(2)(xi)....................................................................................... 9

    E.  The Instant Lawsuit. ................................................................................... 10

LEGAL STANDARD ......................................................................................... 10

ARGUMENT ....................................................................................................... 11

    I.  PLAINTIFFS' CHALLENGE TO THE DEPARTMENT OF LABOR'S ANNUAL
       ADJUSTMENTS (COUNT VII) SHOULD BE DISMISSED FOR THE SAME REASONS AS IN
       *MCMASTER I*. ............................................................................................... 12

    II.  PLAINTIFFS' CHALLENGES TO THE 2016 AMENDMENT TO 29 C.F.R.
       § 1902.4(C)(2)(XI) (COUNTS IV-VI) ARE BARRED AS UNTIMELY AND, WITH
       RESPECT TO COUNT V, FOR WANT OF A CAUSE OF ACTION. ................................... 12

        A.  Plaintiffs' APA Challenges to the 2016 Amendment (Counts IV and VI)
            Should Be Dismissed as Time-Barred. ..................................................... 13

        B.  Plaintiffs' Claim Based on Executive Order 13,132 (Count V) Should Be
            Dismissed for Want of a Cause of Action and Is Also Time-Barred........ 15

    III. PLAINTIFFS' PLEAS FOR DECLARATORY RELIEF (COUNTS I–III) MUST BE
        DISMISSED EITHER UNDER *THUNDER BASIN* OR, ALTERNATIVELY, FOR WANT OF
        AN INDEPENDENTLY VIABLE CLAIM............................................................ 16

        A.  Under *Thunder Basin*, the Court Lacks Jurisdiction to Hear Plaintiff's
            Preemptive Defenses to OSHA's Withdrawal of Approval of South
            Carolina's State Plan. ............................................................................... 16

        B.  Even if the Court Had Jurisdiction, Counts I–III Would Have to Be
            Dismissed for Want of Any Independently Viable Claim. ....................... 24

    IV. PLAINTIFFS' PLEA FOR INJUNCTIVE RELIEF (COUNT VIII) SHOULD BE DISMISSED.
        .................................................................................................................. 24

CONCLUSION ..................................................................................................... 25

## INTRODUCTION

This is Plaintiffs' second attempt to challenge Defendants' 50-year-old interpretation of the Occupational Safety and Health ("OSH") Act of 1970. Under the OSH Act, any State or Territory may propose to operate its own plan for workplace health and safety. *See* 29 U.S.C. § 667. One condition, however, is that the State plan enforce standards "at least as effective[ly]" as the federal Occupational Safety and Health Administration ("OSHA") does. *Id.* § 667(c)(2). Because OSHA is charged with determining whether a State plan meets that standard, the agency promulgated certain "indices of effectiveness" in 1971. Among them was whether the State plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those prescribed in the [OSH] Act." 29 C.F.R. § 1902.4(c)(2)(xi) (1972). Forty-five years later, after Congress dictated that OSH Act penalties be published in the Code of Federal Regulations and adjusted annually for inflation, this index of effectiveness was amended to reference the new location of those penalties: "effective sanctions . . . such as those set forth in the [OSH] Act, and in 29 CFR 1903.15(d)." *See* 29 C.F.R. § 1902.4(c)(2)(xi). The nub of the dispute is whether Section 1902.4(c)(2)(xi) requires South Carolina's State plan to meet or exceed federal penalty levels and, if so, whether that regulation is permissible under the OSH Act.

Plaintiffs' first case failed because they challenged a purported "mandate" in the most recent inflation-based adjustment to OSH Act penalties, which merely restated preexisting legal obligations and was not, therefore, "agency action" under the Administrative Procedure Act ("APA"). *See* Order 7–10, *McMaster v. U.S. Dep't of Labor*, No. 3:22-cv-2603-SAL (D.S.C. Mar. 2, 2023), ECF No. 34 ("*McMaster I*"). Accordingly, Plaintiff's first case was dismissed without prejudice for lack of jurisdiction. *Id.* at 10.

Plaintiff's second case should likewise be dismissed for various threshold reasons.

*First*, Plaintiffs have reprised their challenge to the Department of Labor's annual, inflation-based adjustments. *See* Compl. ¶¶ 86–91 (Count VII). But that claim fails for the same reason it did in *McMaster I*: Plaintiffs fail to challenge any "agency action" within the meaning of the APA. They offer no reason for the Court to revisit its prior analysis.

*Second*, Plaintiffs have now brought substantive challenges to the July 2016 amendment to OSHA's regulation. *See* Compl. ¶¶ 64–85 (Counts IV–VI). But that amendment was promulgated on July 1, 2016; it became effective on August 1, 2016; and OSHA responded to comments—specifically on the issues now raised by Plaintiffs—on January 18, 2017. Plaintiffs filed the instant complaint on March 14, 2023, more than six years later. Counts IV-VI are therefore time-barred. And Count V fails separately because Executive Order 13,132, which Plaintiffs accuse Defendants of having violated, does not provide a cause of action.

*Third*, Plaintiffs want the Court to declare the meaning of OSHA's regulations and, if necessary, the OSH Act. *See* Compl. ¶¶ 50–63 (Counts I–III). These counts fail for two independent reasons. To start, the Court lacks jurisdiction to hear them under *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), whose vitality was affirmed just last month. *See Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. ---, 143 S. Ct. 890, 900 (2023) (statutory schemes that provide for *post hoc* judicial review in circuit court "generally" are "exclusive" and thus "divest[] district courts of their ordinary jurisdiction over the covered cases" (citation omitted)). Such a scheme exists here: under Section 18(g) of the OSH Act, any State plan whose approval is withdrawn can seek judicial review in the relevant circuit court. *See* 29 U.S.C. § 667(g). To complete the *Thunder Basin* analysis, the Court must then consider three factors, all of which favor dismissal here: Plaintiffs can still obtain meaningful review of their claims in the Fourth Circuit; their claims are integral, not collateral, to any feared withdrawal by OSHA; and interpreting its own regulations and the statute it administers are well within OSHA's expertise. *Cf. Axon Enter.*,

143 S. Ct. at 900–01. Plaintiffs cannot, therefore, circumvent the OSH Act's scheme by bringing a pre-enforcement challenge in district court.

Alternatively, Counts I–III fail because there is no viable claim in which to ground declaratory relief. The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, does not supply its own cause of action. *California v. Texas*, 141 S. Ct. 2104, 2115–16 (2021). Rather, the DJA is "remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950)). In other words, a DJA "claim" (in truth, a misnomer) cannot exist in a vacuum; it depends upon a viable host to survive. And because Plaintiff's substantive claims (Counts IV-VII) must be dismissed, so too must the DJA claims (Counts I–III). *See CGM, LLC*, 664 F.3d at 56 ("Here, CGM's substantive claims fail. Accordingly, so must its Declaratory Judgments Act claim.").

*Fourth*, just as their declaratory-relief claims fail for want of a viable substantive claim, so does Plaintiffs' claim for injunctive relief. *See* Compl. ¶¶ 92–96 (Count VIII). Even if Plaintiffs had a substantive claim, they lack standing to seek injunctive relief because OSHA's withdrawal is far from "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

## BACKGROUND

### A.    The Occupational Safety and Health Act.

Congress passed the OSH Act in 1970. *See* Pub. L. No. 91-596, 84 Stat. 1590 (1970). By default, the Act charged OSHA with developing and enforcing standards for workplace health and safety. *See id.* §§ 6, 8–10, 84 Stat. at 1593–97, 1598–1602. As relevant here, however, the Act allowed any State or Territory to "assume responsibility for development and enforcement" of such standards by submitting a State plan for Department of Labor approval. *Id.* § 18(b), 84 Stat. at 1608. Approval of these State plans would turn on whether, in the Secretary of Labor's

judgment, the State plan satisfies a series of criteria—including, most relevantly here, that the proposed State plan would enforce workplace safety and health standards "at least as effective[ly] as OSHA does. *Id.* § 18(c), 84 Stat. at 1608.[1] If the Secretary agreed that the proposed State plan satisfied the criteria in Section 18(c), he would grant initial approval and begin to "monitor the actual operations of the State plan" for at least three years, during which the Secretary could impose (at his discretion) concurrent federal jurisdiction. *Id.* § 18(e), 84 Stat. at 1608. Following that three-year period, the Secretary would make a final determination under Section 18(e) and dissolve any concurrent federal jurisdiction that had been instituted. *Id.* Thereafter, the Secretary would "make a continuing evaluation" of the State plan's compliance with Section 18(c) and, if he found a failure to comply, withdraw his approval after notice and an opportunity for a hearing. *Id.* § 18(f), 84 Stat. at 1609.

Congress provided penalties for violating workplace standards in Section 17 of the OSH Act, 84 Stat. at 1606–07. For example, the OSH Act provided maximum penalties of $10,000 for willful or repeated violations, *id.* § 17(1), 84 Stat. at 1606, and $1,000 for serious or non-serious violations, *id.* §§ 17(b)–(c), 84 Stat. at 1606.

### B.    South Carolina's State Plan and OSHA's Regulations.

South Carolina was an early and eager participant in the State-plan approval process. Six months after the OSH Act became law, the State's legislature passed "An Act To Authorize The Commissioner Of Labor To Promulgate Rules And Regulations Relative To Health And Safety Protection, To Provide For Enforcement And To Provide For Penalties And The Collection And Disposition Thereof." *See* Ex. 1, 1971 S.C. Acts 505 ("1971 SC Act"). This act laid the groundwork for South Carolina's eventual State plan. Notably, however, the 1971 SC Act provided

---

[1] The Secretary later delegated his responsibilities under the OSH Act to the Assistant Secretary for Occupational Safety and Health, who heads OSHA. Secretary of Labor's Order 8-2020, 85 Fed. Reg. 58,393 (Sep. 18, 2020).

different penalties than those in the OSH Act as enacted. *Compare id.* at 508, § 13 *with* OSH Act § 17, 84 Stat. at 1607. For example, South Carolina only imposed a $1,000 maximum penalty for willful or repeated violations—one tenth of the federal maximum. *Id.* at 508, § 13.

Ten days after the 1971 SC Act took effect, OSHA proposed a rule to govern approval of State plans. *See* Development and Enforcement of State Standards, 36 Fed. Reg. 11,738 (June 18, 1971).[2] As relevant here, OSHA set forth "indices of effectiveness" to gauge whether a proposed State plan would, as required by the OSH Act, enforce workplace standards as effectively as OSHA did. *Id.* at 11,740–41. One such index was whether the State plan "[p]rovides effective sanctions against employers who violate standards and orders." *Id.* at 11,741 (proposed version of 29 C.F.R. § 1902.4(c)(11)). These regulations were finalized later that year. *See* State Plans for the Development and Enforcement of State Standards, 36 Fed. Reg. 20,751 (Oct. 29, 1971). As relevant here, OSHA elaborated further the index of effectiveness above: a State plan had to "[p]rovide[] effective sanctions against employers who violate State standards and orders, *such as those prescribed in the [OSH] Act*." *Id.* at 20,754 (codified at 29 C.F.R. § 1902.4(c)(2)(xi)) (emphasis added). At the time these regulations were finalized, South Carolina still provided a fraction of the maximum penalties that the OSH Act did.

Less than six months later, South Carolina submitted its State plan for initial approval. *See* South Carolina Developmental Plan, 37 Fed. Reg. 10,535 (May 24, 1972). The Department of Labor held a public hearing on July 10–11, 1972, and issued its initial approval on December 6, 1972. *See* Approved State Plans for Enforcement of State Standards, 37 Fed. Reg. 25,932 (Dec. 6, 1972). However, the "penalty level disparity" between South Carolina and OSHA did not go unnoticed. *See id.* at 25,933. Rather, the Secretary's determination to grant initial approval was

---

[2] The Secretary of Labor was delegated authority to "prescribe such rules and regulations as he may deem necessary to carry out [his] responsibilities under [the OSH] Act." OSH Act § 8(g)(2), 84 Stat. at 1600.

conditioned on a series of proposed amendments to South Carolina's State plan, including legislative amendments to raise South Carolina's penalty levels at least to OSHA's, and on South Carolina's assurances that, as a "developmental step" of its State plan, it would introduce the necessary legislative changes. *Id.*

Six months after the Secretary's initial approval, South Carolina amended its laws specifically to match the maximum federal penalties. *See* Ex. 2, 1973 S.C. Acts 376 ("1973 SC Act"). *Compare id.* § 1 (revising Sections (a), (b), (c), (d), (e), (f), (f.1), and (f.2) of SC Act No. 379) *with* OSH Act §§ 17(a), (b), (c), (d), (e), (i), (f), (g), 84 Stat. at 1606–07, respectively. For each type of violation, South Carolina adopted exactly the maximum federal penalty. After making these amendments, South Carolina submitted a supplement to its State plan. *See* Advanced Notice of Proposed Supplements to Approved Plan, 40 Fed. Reg. 3,606 (Jan. 23, 1975). The "[d]escription of supplements" began as follows:

> (a) Legislation. In accordance with the commitment expressed in 29 CFR 1952.103(a), the State submitted amendments to its enabling legislation (§ 40-261 through 40-274, South Carolina Code of Laws, 1962) which were designed to bring the plan into conformity with the requirements of 29 CFR Part 1902. The legislation was enacted by the South Carolina Legislature during its 1973 session and became effective on June 12, 1973.

*Id.* at 3,606. Subject to certain issues not relevant here, the Department of Labor accepted South Carolina's supplemental proposal on September 25, 1975. *See* Approved State Plan for Enforcement of State Standards: South Carolina; Completion of Developmental Steps, 40 Fed. Reg. 44,132 (Sep. 25, 1975).

The next year, OSHA certified that South Carolina had completed all "developmental steps" necessary to receive final approval. *See* Approved State Plans for Enforcement of State Standards: South Carolina; Certification of Completion of Developmental Steps, 41 Fed. Reg. 32,424 (Aug. 3, 1976). Once again, OSHA recounted that South Carolina had made "[l]egislative

amendments required to bring the South Carolina occupational safety and health statute (§ 40-257.1 through § 40-274, South Carolina Code of Laws, 1962) into conformity with Federal requirements." *Id.* at 32,424.

Only after South Carolina increased its maximum fines to match OSHA's, and thus brought its plan "into conformity with Federal Requirements," *id.*, was the State plan given final approval on December 18, 1987. *See* South Carolina State Plan; Final Approval Determination, 52 Fed. Reg. 48,103 (Dec. 18, 1987).[3]

### C.    Recent Adjustments to OSH Act Civil Penalties and OSHA Regulations.

Plaintiffs' second case focuses primarily on OSHA's July 1, 2016, amendment to 29 C.F.R. § 1902.4(c)(2)(xi). The story of that amendment begins in 1990, when Congress acknowledged that many federal penalties had gone decades without being adjusted for inflation. *See* Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 ("1990 Federal Penalties Act"). Congress directed the Executive to compile a list of all civil monetary penalties and to determine what increases would be necessary to adjust for inflation as measured by the Consumer Price Index. *See id.* §§ 4–5, 104 Stat. at 891–92.

Separately, through the Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388, Congress amended the OSH Act to increase its civil penalties. The maximum penalty for a willful or repeated violation was raised from $10,000 to $70,000, and a new minimum penalty of $5,000 was imposed. *See id.* § 3101(1), 104 Stat. at 1388-29. The previous $1,000 maximum fine for other violations was increased to $7,000. *Id.* § 3101(2), 104 Stat. at 1388-29. In the wake of these increases, every State plan—including South Carolina's—increased its penalties to match the new OSH Act levels. *See, e.g.*, Ex. 3, 1991 S.C. Acts 25. Thus, between June 12, 1973, and July 1, 2016, South Carolina and OSHA imposed exactly the same maximum and

---

[3] Final approval was delayed for reasons not relevant here. *See* 52 Fed. Reg. at 48,104–05 ("History of the South Carolina Plan and its Compliance Staffing Benchmarks").

minimum penalties. To Defendants' knowledge, South Carolina never challenged its legal obligation to meet or exceed federal fine levels and has twice increased its fines to match.

Back to inflation-based adjustments. Having solicited reports on civil monetary penalties, Congress amended the 1990 Civil Penalties Act to put those data into action. *See* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321, 1321-373 ("1996 Civil Penalties Act"). Instead of amending *seriatim* the many federal statutes that impose civil penalties, Congress directed the head of each agency to "by regulation adjust civil monetary penalt[ies] provided by law." *Id.* § 31001(s)(1), 110 Stat. at 1321-373. However, the OSH Act was exempted from this amendment to the 1990 Civil Penalties Act. OSHA therefore continued to impose penalties under the OSH Act as amended in 1990.

That lasted nearly a decade, until Congress again amended the 1990 Civil Penalties Act. *See* Bipartisan Budget Act of 2015, § 701 ("Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015"), 129 Stat. 584, 599–601 ("2015 Federal Penalties Act"). This amendment required each agency to make a one-time "catch up adjustment" by July 1, 2016, and then to publish annual adjustments thereafter. *Id.* The 2015 amendment also lifted the OSH Act's exemption, such that OSHA became subject to these requirements as well. *Id.*

That prompted a change to OSHA's regulations. Recall that, since 1971, OSHA's regulations had required each State plan to "provide[] effective sanctions against employers who violate State standards and orders, such as those prescribed in the [OSH] Act," 29 C.F.R. § 1902.4(c)(2)(xi) (1972), in order to meet the statutory requirement of enforcing standards "at least as effective[ly]" as OSHA does, 29 U.S.C. § 667(c)(2). To reflect Congress' choice in 2015 for OSHA to publish its penalties in annual administrative publications (codified at 29 C.F.R. § 1903.15(d)), rather than legislative amendments, OSHA added a citation to those annual publications: each State plan would be required to "provide[] effective sanctions against employers

who violate State standards and orders, such as those set forth in the [OSH] Act, *and in 29 CFR 1903.15(d)*." 29 C.F.R. § 1902.4(c)(2)(xi) (emphasis added to new language). OSHA also changed the phrasing from "prescribed in" to "set forth in." *Id.* That amendment was published as part of the 2016 "catch-up adjustment," *see* Department of Labor Federal Civil Penalties Inflation Adjustment Act Catch-Up Adjustments, 81 Fed. Reg. 43,430 (July 1, 2016).

### D.    The Parties' Dealings Since the July 2016 Amendment to 29 C.F.R. § 1902.4(c)(2)(xi).

The July 2016 amendment precipitated a years-long dialogue between OSHA and the South Carolina Department of Labor, Licensing & Regulation ("LLR"). In the first Federal Annual Monitoring and Evaluation ("FAME") Report after the 2016 amendment, OSHA wrote the following under "Major New Issues":

> With the passage of the Bipartisan Budget Bill on November 2, 2015, OSHA raised its maximum penalties effective August of 2016 and again increased penalties according to the consumer price index (CPI) in January of 2017. As required by law, OSHA will continue to raise maximum penalties each year according to the CPI. *State Plans are required to adopt both the catch-up increase and the annual increase.*

FY2016 FAME Report 3 (emphasis added).[4] This admonition has been repeated in every FAME Report since. *See* FY2017 Comprehensive FAME Report 17[5]; FY2018 Follow-up FAME Report 6[6]; FY2019 Comprehensive FAME Report 5[7]; FY2020 Follow-up FAME Report 5 ("December 2020 marked four years since the first deadline passed for adoption and the South Carolina State Plan has not yet completed the legislative changes to increase maximum penalties.")[8]; FY2021

---

[4] *Available at* https://www.osha.gov/sites/default/files/2019-07/south_carolina_2016.pdf.

[5] *Available at* https://www.osha.gov/sites/default/files/2019-06/south_carolina_2017.pdf.

[6] *Available at* https://www.osha.gov/sites/default/files/2019-06/south_carolina_2018.pdf.

[7] *Available at* https://www.osha.gov/sites/default/files/2020-07/south-carolina_2019.pdf.

[8] *Available at* https://www.osha.gov/sites/default/files/2021-07/South-Carolina-FY-2020-Follow-up-FAME-Report.pdf.

Comprehensive FAME Report 17–18 ("Finding- FY-2021-02: SC State Plan has failed to adopt OSHA's initial FY 2016 maximum and minimum penalty increase and subsequent annual penalty amount increases.").[9] And as the Court knows, OSHA has repeated the requirements of 29 C.F.R. § 1902.4(c)(2)(xi) in every annual inflation-based adjustment since January 2017. *See McMaster I* at 8 (collecting citations).

### E.     The Instant Lawsuit.

Plaintiffs filed this suit on March 14, 2023. The new complaint divides roughly into three parts. Plaintiffs first seek declarations, presumably under the Declaratory Judgment Act, as to the meaning of 29 U.S.C. § 667(c)(2) (Count I), 29 C.F.R. § 1902.4(c)(2)(xi) (Count II), and 29 C.F.R. § 1902.37(b)(12) (Count III).[10] *See* Compl. ¶¶ 50–63. Plaintiffs then bring substantive challenges to the July 2016 amendment to OSHA's regulation, 29 C.F.R. § 1902.4(c)(2)(xi), as arbitrary and capricious (Count IV), as violative of Executive Order 13,132 (Count V), and as having unjustly avoided notice-and-comment rulemaking (Count VI). *See id.* ¶¶ 64–85. Finally, Plaintiffs repeat their charge that OSHA's 2016–2023 annual adjustments violated the APA (Count VII) and ask for a permanent injunction (VIII). *See id.* ¶¶ 86–96.

### LEGAL STANDARD

This motion brings, in part, a "facial" challenge to the Court's jurisdiction. To prevail on such a challenge, Defendants "must show that [the] complaint fails to allege facts upon which

---

[9]     *Available      at*     https://www.osha.gov/sites/default/files/2022-07/south-carolina-fy-2021-comprehensive-fame-report.pdf.

[10] This case focuses on 29 C.F.R. § 1902.4(c)(2)(xi), which was amended in 2016 to reference OSHA's penalties as relocated by Congress. Plaintiffs also ask the Court to declare the meaning of 29 C.F.R. § 1902.37(b)(12), which is part of OSHA's regulatory procedures for making a determination to grant a State plan final approval. Specifically, this provision requires OSHA to consider whether the State plan "proposes penalties in a manner at least as effective as under the Federal program, including the proposing of penalties for first instance violations and the consideration of factors comparable to those required to be considered under the Federal program." *Id.* § 1902.37(b)(12).

subject-matter jurisdiction can be predicated." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). Defendants may do so by showing that the Plaintiffs' Complaint, on its face, fails to make allegations sufficient to satisfy the Plaintiffs' burden of establishing jurisdiction. *Id.* at 621 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

To survive Defendants' motion under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must contain enough facts 'to raise a right to relief above the speculative level.'" *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 361 (4th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A]lthough a court must accept as true all factual allegations contained in a complaint, such deference is not accorded legal conclusions stated therein," and "[t]he mere recital of elements of a cause of action, supported only by conclusory statements is not sufficient." *Id.* (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).

## ARGUMENT

All eight of Plaintiffs' claims should be dismissed. The Court should begin by rejecting Count VII, which merely reprises the claim that was dismissed in *McMaster I*. Then the Court should address Plaintiffs' three substantive challenges to OSHA's 2016 amendment to 29 C.F.R. § 1902.4(c)(2)(xi) (Counts IV-VI) and dismiss them as untimely and, in the case of Count V, for want of a cause of action.

That leaves Plaintiffs' pleas for declaratory relief (Counts I–III) and a permanent injunction (Count VIII). The declaratory-relief counts fail, first and foremost, because they are essentially preemptive defenses to a hypothetical withdrawal of approval by OSHA. Because Congress has

vested review of those withdrawals in circuit court, this Court lacks jurisdiction to hear such a pre-enforcement challenge under *Thunder Basin*, 510 U.S. 200. Alternatively, declaratory relief cannot be awarded absent an independent substantive claim—which, as explained above, Plaintiffs do not have. For the same reason, they could not obtain a permanent injunction even if OSHA's withdrawal were "*certainly impending*," *Clapper*, 568 U.S. at 409, which it is not.

I.    PLAINTIFFS' CHALLENGE TO THE DEPARTMENT OF LABOR'S ANNUAL ADJUSTMENTS (COUNT VII) SHOULD BE DISMISSED FOR THE SAME REASONS AS IN *MCMASTER I*.

In *McMaster I*, Plaintiffs challenged a portion of the Department of Labor's annual adjustments made pursuant to the 2015 Federal Penalties Act: the section addressing federalism concerns as required by Executive Order 13,132. *See McMaster I* at 8 (citing 87 Fed. Reg. 2,328, 2,331–32 (Jan. 14, 2022)). Plaintiffs portrayed this as a "mandate" that State plans meet or exceed federal fine levels. *Id.* at 6. But as the Court rightly held, this "mandate" merely restated preexisting legal requirements and was not, therefore, assailable under the APA. *Id.* at 8–9. Because Plaintiffs' claims were dismissed, and Plaintiffs did not appeal, that should have been the end of it.

Yet inexplicably, Plaintiffs have brought the same claim again. *See* Compl. ¶¶ 86–91 (Count VII). Other than changing "mandate" to "demand" and folding in challenges to the same language in all prior adjustments, *id.* ¶ 89, the claims are identical. Plaintiffs do not offer any reason why the Court should revisit its prior analysis. Because this claim still fails to challenge any "agency action" as defined by the APA, Count VII should be dismissed.[11]

II.    PLAINTIFFS' CHALLENGES TO THE 2016 AMENDMENT TO 29 C.F.R. § 1902.4(C)(2)(XI) (COUNTS IV-VI) ARE BARRED AS UNTIMELY AND, WITH RESPECT TO COUNT V, FOR WANT OF A CAUSE OF ACTION.

On July 1, 2016, OSHA amended its definition of "effective sanctions" to read "such as those *set forth in* the [OSH] Act*, and in 29 C.F.R. 1903.15(d)*." 81 Fed. Reg. at 43,452 (emphasis

---

[11] Separately, Plaintiffs' challenge to the 2016 and 2017 adjustments would be barred by the APA's six-year statute of limitations, which is addressed in the following section.

added to amended language). Plaintiffs challenge that amendment on three grounds. Under the APA, Plaintiffs challenge the amendment as arbitrary and capricious (Compl. ¶¶ 64–73 (Count IV)) and because it did not undergo notice-and-comment rulemaking (*id.* ¶¶ 78–85 (Count VI)). Separately, Plaintiffs allege that the amendment violated Executive Order 13,132 by failing to consider federalism concerns. *Id.* ¶¶ 74–77 (Count V). All three claims should be dismissed.

### A. Plaintiffs' APA Challenges to the 2016 Amendment (Counts IV and VI) Should Be Dismissed as Time-Barred.

APA claims are subject to a six-year statute of limitations. *See Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 681–82 (4th Cir. 2020) (citing 28 U.S.C. § 2401(a)). "The Fourth Circuit has held that when 'plaintiffs bring a facial challenge to an agency [action] . . . the limitations period begins to run when the agency publishes the regulation.'" *Id.* (quoting *Hire Order Ltd v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012)).

The 2016 Catch-Up Adjustment was published as an interim final rule on July 1, 2016, with an effective date of August 1, 2016. 81 Fed. Reg. at 43,430. OSHA responded to public comments—including from the Occupational Safety and Health State Plan Association ("OSHSPA"), of which South Carolina is a member—on January 18, 2017. This case was filed on March 14, 2023. Thus, by any measure, Plaintiffs filed suit more than six years after the 2016 amendment to 29 C.F.R. § 1902.4(c)(2)(xi).

Plaintiffs cannot claim surprise or ignorance that their claim accrued. They were on notice as of November 2, 2015, that the OSH Act penalties would be subject to annual adjustments based on inflation. *See* 2015 Federal Penalties Act § 701. They were on notice as of July 1, 2016, that OSHA interpreted the 2015 Federal Penalties Act, in conjunction with section 18(c) of the OSH Act and OSHA's longstanding regulations, to "necessitate an increase to the maximum and minimum penalty amounts required by states that administer their own occupational safety and health programs." *See* 81 Fed. Reg. at 43,446. Although OSHSPA submitted comments on the

July 2016 amendment, the association did not challenge OSHA's authority to require State plans to meet or exceed federal penalty levels. *See* 82 Fed. Reg. at 5,376 (emphasis added). Other States (not including South Carolina) specifically challenged OSHA's authority to make the 2016 amendment—calling it both arbitrary and capricious and in excess of OSHA's statutory authority. *Id.* These states also argued that the 2016 amendment should have gone through notice-and-comment rulemaking. *Id.* OSHA answered each charge in detail, *see id.*, after which *no State* brought *any* legal challenge to the 2016 amendment on *any* ground. And finally, as noted in Part D of the Background section above, OSHA has consistently stressed in recent years that South Carolina must meet or exceed federal penalty levels in order to comply with 29 C.F.R. § 1902.4(c)(2)(xi).[12] Yet South Carolina waited more than six years to bring this challenge.

Finally, Plaintiffs' first suit ("*McMaster I*") did not toll the statute of limitations. As the Court will recall, Defendants' primary argument was that Plaintiffs hadn't challenged any OSHA regulation or amendment—instead targeting the "mandate" in the annual adjustments, which wasn't agency action. *See McMaster I* at 7–9. The Court agreed with that argument. *Id.* For that matter, so did Plaintiffs. *See* Ex. 4, Hr'g on Mot. for Prelim. Inj. Tr. 5:23–25 ("Now, the federal government has suggested we should have challenged the OSH Act or the underlying regulation,

---

[12] That position is consistent with the Parties' dealings from 1971 to July 2016, during which South Carolina twice increased its penalties specifically to bring its State plan into compliance with OSHA's regulations. Recall that the State's first OSH legislation imposed fines that were a mere fraction of the OSH Act's. Ex. 1, 1971 SC Act. But then OSHA passed the "such as" regulation, 29 C.F.R. § 1902.4(c)(2)(xi), after which South Carolina increased its maximum fines to match OSHA's—adopting the federal penalty provisions almost *verbatim*. And the regulatory history recounts, more than once, that the State made a "commitment" to increase its fines "*to bring the plan into conformity with the requirements of 29 CFR Part 1902.*" 40 Fed. Reg. 3,606 (emphasis added); *see also* 41 Fed. Reg. at 32,424 (same). After the OSH Act was amended in 1990 to increase its penalties, South Carolina again amended its fine levels to match. *See* Ex. 3, 1991 S.C. Acts 25. So did every other State plan. *See* Approval of State Plan Supplements, 59 Fed. Reg. 14,554 (Mar. 29, 1994). Whether or not Plaintiffs subjectively agreed with OSHA's interpretations, they have *known* about those interpretations for 50 years.

but I don't think that's correct.") ("12/2/2022 Hr'g Tr.").[13] Because Plaintiffs' prior complaint did not challenge the 2016 amendment to 29 C.F.R. § 1902.4(c)(2)(xi), no such claims were preserved by its filing. Counts IV and VI are time-barred and should be dismissed.

### B.     Plaintiffs' Claim Based on Executive Order 13,132 (Count V) Should Be Dismissed for Want of a Cause of Action and Is Also Time-Barred.

Count V purports to challenge the 2016 amendment, not as violating the APA or any statute, but rather as violating Executive Order 13,132: Federalism, 64 Fed. Reg. 43,255 (Aug. 10, 1999). *See* Compl. ¶¶ 74–77. That claim can be dispensed with summarily because, "[a]s a general rule, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995) (quotation marks omitted). Consistent with this principle, the text of E.O. 13,132 expressly precludes judicial review: "This order is intended only to improve the internal management of the executive branch, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a private party against the United States, its agencies, its officers, or any person." 64 Fed. Reg. at 43,259 ("Judicial Review").

Courts routinely dismiss claims alleging agency violations of Executive Orders that expressly preclude judicial review. *See Valentine Props. Assocs., LP v. U.S. Dep't of Housing & Urban Development*, 785 F. Supp. 2d 357, 368 (S.D.N.Y. 2011) (Executive Order 13,132 "by [its] own terms, [is] intended to improve the internal management of the executive branch and not to permit judicial review of an agency's compliance with [its] provisions") (citation omitted), *aff'd*, 501 Fed. Appx. 16 (2d Cir. 2012); *see also Michigan v. Thomas*, 805 F.2d 176, 187 (6th Cir. 1986)

---

[13] That was no stray remark. *See* 12/2/2022 Hr'g Tr. at 5:9–15 ("We challenged the 2022 Adjustment, and the federal government is suggesting we should have challenged either the OSH Act itself or Section 1902.4(c)(2)(xi) of the federal regulations, which is the regulation it's implementing, that section of the OSH Act. But I want to explain, before we get into the weeds any more, why we've challenged the right thing.").

(same E.O. language) ("Given this clear and unequivocal intent that agency compliance with Executive Order 12,291 not be subject to judicial review, we hold that the Order provides no basis for rejecting the EPA's final action." (citing *In re Surface Mining Regul. Litig.,* 627 F.2d 1346, 1357 (D.C. Cir. 1980)); *Tzumi Innovations LLC v. Regan,* 557 F. Supp. 3d 499, 510 (S.D.N.Y. 2021) (same E.O. language) ("This type of language in an Executive Order precludes a private right of action." (citing *Valentine Props. Assocs., LP,* 785 F. Supp. 2d at 368; *Calef ex rel. Calef v. Barnhart,* 309 F. Supp. 2d 425, 433 (E.D.N.Y. 2004)). Although an executive order can be privately enforceable when issued pursuant to a statutory mandate or delegation of congressional authority, *see Chen Zhou Chai,* 48 F.3d at 1339–40, that is not true of Executive Order 13,132.

Even if Plaintiffs *had* a cause of action to sue under E.O. 13,132, that claim would have accrued more than six years ago. Accordingly, it would be barred for the same reasons stated in Part II.A., above. In either case, Count V should be dismissed.

III.    **PLAINTIFFS' PLEAS FOR DECLARATORY RELIEF (COUNTS I–III) MUST BE DISMISSED EITHER UNDER *THUNDER BASIN* OR, ALTERNATIVELY, FOR WANT OF AN INDEPENDENTLY VIABLE CLAIM.**

   A.    **Under *Thunder Basin*, the Court Lacks Jurisdiction to Hear Plaintiff's Preemptive Defenses to OSHA's Withdrawal of Approval of South Carolina's State Plan.**

Plaintiffs ask the Court to declare the meaning of 29 U.S.C. § 667(c)(2) (Count I), 29 C.F.R. § 1902.4(c)(2)(xi) (Count II), and 29 C.F.R. § 1902.37(b)(12) (Count III). Plaintiffs fear that OSHA will use its interpretation of those provisions as a basis to withdraw final approval of South Carolina's State plan. But in the hypothetical scenario in which OSHA withdraws final approval of South Carolina's State plan, there is a judicial backstop in place. *See* 29 U.S.C. § 667(g) ("The State may obtain a review of a decision of the Secretary withdrawing approval of . . . its plan by the United States court of appeals for the circuit in which the State is located[.]"). No one disputes that, on post-withdrawal review in the Fourth Circuit, Plaintiffs could urge their

interpretation of the OSH Act and OSHA regulations—questions of law on which the Court of Appeals would owe no special deference to the agency's findings.[14] This lawsuit is thus a shortcut: Plaintiffs want the Court to decide legal questions that would, and should, be presented to the Fourth Circuit on *post hoc* review pursuant to the doctrine set forth by the Supreme Court in *Thunder Basin*, 510 U.S. 200. The idea of *Thunder Basin* is simple: where Congress vests post-enforcement review in circuit court, it likely didn't intend for district courts to hear the same claims preemptively. Thus, "[t]he ultimate question" under *Thunder Basin* is "what Congress has done." *Axon Enterprise*, 143 S. Ct. at 900.

**1.** In applying the *Thunder Basin* doctrine, the Court first asks whether Congress' intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme." *Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 629 (4th Cir. 2018) (quoting *Thunder Basin*, 510 U.S. at 207). That condition is satisfied where the relevant statute establishes a "comprehensive scheme that provides for judicial review in the appropriate court of appeals." *Id.* (quoting *Bennett v. U.S. Secs. & Exch. Comm'n*, 844 F.3d 174, 181 (4th Cir. 2016)). No one can dispute that here. *See* 29 U.S.C. § 667(g). Not only is there judicial review of any withdrawal by OSHA, but State plans must be "afford[ed] due notice and opportunity for a hearing" before such withdrawal. *Id.* § 667(f).[15]

The conclusion is buttressed, moreover, where the statute shows that Congress "knew how to preserve district-court jurisdiction" when it wanted—for example, by granting district-court

---

[14] If this case proceeded to the merits, Defendants might argue that they merit "*Auer* deference" when interpreting their own regulations, or "*Chevron* deference" when interpreting the statute they administer. But those doctrines would apply equally in circuit court as they would in district court. Thus, Plaintiffs suffer no disadvantage by litigating in the Fourth Circuit.

[15] Under OSHA's regulations, the State plan may also petition OSHA to stay its final determination to withdraw final approval pending judicial review. *See* 29 C.F.R. § 1955.44. And if that stay were denied, Plaintiffs could move the Fourth Circuit for an injunction pending appeal or seek to expedite the appeal. *See* Fed. R. App. P. 8(a)(2); 4th Cir. Local Rules 8, 12(c).

jurisdiction over "certain actions brought by the agency *but not* by private parties." *Berkley*, 896 F.3d at 629 (quoting *Bennett*, 844 F.3d at 181). That is also indisputable here. Section 11 of the OSH Act ("Judicial Review") provides that an employee may complain of retaliatory discrimination to the Secretary, who is singularly empowered, upon finding a violation, to bring suit in district court. 29 U.S.C. § 600(c)(2). Just two subsections prior, Congress directed any person aggrieved by an order of the Occupational Safety and Health Review Commission to petition for review in circuit court. Obviously, Congress knew how to distinguish between district- and circuit-court jurisdiction when it passed the OSH Act, and when it came to reviewing OSHA's decision to withdraw approval of a State plan, it chose the latter. The first *Thunder Basin* requirement is satisfied.[16]

**2.** The second *Thunder Basin* question is whether Plaintiffs' claims are "of the type Congress intended to be reviewed within th[e] statutory structure" of the OSH Act. *Axon Enterprise*, 143 S. Ct. at 900 (quoting *Thunder Basin*, 510 U.S. at 212). This implicates the three *Thunder Basin* factors: (1) whether precluding district-court jurisdiction would "foreclose all meaningful judicial review" of the plaintiff's claims; (2) whether those claims are "wholly collateral to [the] statute's review provisions"; and (3) whether the claims are "outside the agency's expertise." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13). All three factors point toward divestiture of this Court's jurisdiction.

---

[16] To Defendants' knowledge, no court has yet considered whether Section 18(g) of the OSH Act divests district courts of jurisdiction. However, courts have held that other portions of the OSH Act divest district courts of jurisdiction. *See Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 868, 872–73 (D.C. Cir. 2002) (holding that review of OSHA citations, 29 U.S.C. §§ 660(a), (b), prevented district court from hearing APA and constitutional challenges to an OSHA survey) ("In short, in every relevant respect the statutory review provisions of the OSH Act parallel those of the Mine Act, and we therefore join the First and Sixth circuits in concluding that *Thunder Basin*'s analysis of review under the Mine Act is fully applicable to the OSH Act." (citing *In re Establishment Inspection of Manganas Painting Co.*, 104 F.3d 801, 803 (6th Cir. 1997); *Northeast Erectors Ass'n of the BTEA v. Secretary of Labor*, 62 F.3d 37, 40 (1st Cir. 1995)).

**a.** Supreme Court precedent "make[s] clear that adequate judicial review does not usually demand a district court's involvement," because "[r]eview of agency action in a court of appeals can alone meaningfully address a party's claims." *Axon Enterprise*, 143 S. Ct. at 903 (quoting *Thunder Basin*, 510 U.S. at 215; citing *Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 21 (2012) (cleaned up). This case is no exception: if OSHA were to withdraw South Carolina's State plan, Plaintiffs could obtain meaningful review in the Fourth Circuit, where their legal claims would be preserved and litigated on the same playing field as in this Court. Plaintiffs have never disputed this; they only argue that their State plan would have to fold in the meantime—*i.e.*, that they have to "bet the farm" to get judicial review. *See* Pls. Notice of Supp. Authority 2, *McMaster I*, ECF No. 32. Assuming Plaintiffs will repeat that argument, it warrants several responses.

For starters, the OSH Act itself assumes that a State's plan will have ceased before the State can petition for judicial review. Under Section 18(f), OSHA shall "notify the State agency of [OSHA's] withdrawal of approval of such plan and upon receipt of such notice *such plan shall cease to be in effect*." 29 U.S.C. § 667(f) (emphasis added). And Section 18(g) makes clear that only "following receipt of notice of such decision" may a State petition for review. *Id.* § 667(g). This point is critical because, under *Thunder Basin*, "[t]he ultimate question is how best to understand what Congress has done." *Axon Enterprise*, 143 S. Ct. at 900. That much is clear here. If Plaintiffs were correct that the prospect of withdrawal is a ticket to pre-enforcement review, then Section 18(g) would be a dead letter. Any State or Territory could run to district court, and then appeal to circuit court, to settle the meaning of OSHA's regulations without ever going through the withdrawal process. None of them would wait and seek judicial review under Section 18(g)— why would they? By effectively nullifying Section 18(g), Plaintiffs would achieve the *opposite* of "what Congress has done" in the OSH Act. *Id.*

There is no reason to contravene Congress's plain intent here, in any event, because

Plaintiffs are not being asked to "bet the farm." The Supreme Court coined that phrase when discussing *Terrace v. Thompson*, 263 U.S. 197 (1923), in which the plaintiff faced criminal prosecution under a State law and, if convicted, "forfeiture of his farm, fines, and penalties." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). The common thread among the cases collected by *MedImmune* is that the challengers risked *criminal prosecution* if they tested the validity of the law—that is what "bet the farm" referred to. *See id.* South Carolina faces no such threat here. And while the Fourth Circuit has reasoned that "plaintiffs are denied meaningful review when they are subject to 'some additional *and irremediable* harm beyond the burdens associated with the dispute resolutions process,'" *Berkley*, 896 F.3d at 631 (quoting *Bennett*, 844 F.3d at 186 n.13 (emphasis added)), Plaintiffs' harm here—withdrawal of final approval of the State plan—is expressly remediable. *See* 29 U.S.C. 667(g) (allowing the appropriate circuit court to "set aside in whole or in part the action of the Secretary.").[17]

The Fourth Circuit has found "meaningful review" under *Thunder Basin* even when the plaintiff would suffer something more than the cost of litigation. In *Berkley* itself, the Fourth Circuit rejected the plaintiff-landowners' argument that allowing construction to continue while they petitioned the agency, and ultimately the Fourth Circuit, would deprive them of "meaningful review." 896 F.3d at 627–28, 631–32. In a prior case, the Fourth Circuit rejected the notion of "*per*

---

[17] That was not true with respect to the cases catalogued in *Berkley. See* 896 F.3d at 631–32 (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496–97 (1991) (plaintiffs would have had to "surrender themselves for deportation"); *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976) (plaintiff's "physical condition and dependency upon the disability benefits [meant] an erroneous termination would damage him in a way not recompensable through retroactive payments"); *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 874–75 (3d Cir. 1996) (disabled plaintiff, dependent on benefits, lost them for almost two and a half years). *Compare Hill v. SEC*, 825 F.3d 1236, 1247 (11th Cir. 2016) (review was meaningful because the plaintiff had an *opportunity* to obtain a stay pending judicial review, and because the circuit court had "the power to vacate a Commission order in whole"); *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 285 (2d Cir. 2016) (post hoc review is "imperfect" insofar as it cannot restore "financial and emotional resources to complete a proceeding," and yet nonetheless "suffic[ient] to vindicate" the plaintiff's claim)).

*se* irreparable harm of being forced to submit to the orders of an organization acting beyond the limits of its statutory authority," as well as the plaintiff-appellant's fear of "reputational harm," holding that neither of these deprived the plaintiff of meaningful review. *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 844 F.3d 414, 423 (4th Cir. 2016). And in *Bennett*, the Fourth Circuit rejected as "too broad" the argument that a litigant "is not required to endure the administrative process *and incur a sanctions order* before she has access to a court." 844 F.3d at 186 & n.13 (emphasis added). Defendants are aware of no case in which the sort of harm feared by Plaintiffs was held to deprive a putative plaintiff of "meaningful review."

Furthermore, the term "bet the farm" refers to *collateral* wagers that must be placed before challenging the underlying prohibition. For example, going to prison before challenging Washington State's prohibition on farmers' leasing land to an alien. *Terrace*, 263 U.S. at 212–16. Or incurring a "sizeable fine" for committing a discovery violation before challenging the PCAOB's auditing standards. *Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010). By contrast, Plaintiffs are not being asked to "bet" anything that they aren't already jeopardizing through the judicial review they seek: their ability to operate a State plan that does not meet or exceed federal penalty levels. The Fourth Circuit made precisely this point in *Bennett*:

> Bennett places principal reliance on *Free Enterprise*, where the Supreme Court held that § 78y was not an exclusive route to judicial review on the facts of that case. But unlike the plaintiffs in *Free Enterprise*, Bennett is already embroiled in an enforcement proceeding. To bring her challenge to the constitutionality of ALJ appointments before an Article III court, Bennett need not "bet the farm"—in fact, she need not take *any* additional risks. *Id.* at 490, 130 S. Ct. 3138. She has already allegedly committed the actions that violate federal securities laws.

844 F.3d at 186. So too here, South Carolina has already taken the (in)action that violates the OSH Act as implemented by OSHA's regulations: refusing to increase its maximum penalties to meet or exceed federal levels, even after years of exhortation from OSHA. The State's wager has been

21

placed; it need not "take *any* additional risks." *Id.*

Finally, the exceptions to *Thunder Basin* recognized in *Free Enterprise Fund* and *Axon Enterprise* were to avoid the "here-and-now injury" flowing from *unconstitutional* agency action. *Axon Enterprise*, 143 S. Ct. at 903 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2195 (2020)).[18] The Court explained that the harm was "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* Plaintiffs have never alleged that OSHA is wielding unconstitutional authority, or that it is illegitimate in any way. Rather, the Parties simply disagree about how to read OSHA's regulations and the OSH Act. That is exactly the kind of claim that Congress channeled to *post hoc* review in circuit court, and they are a far cry from the exceptions carved out in *Free Enterprise Fund* and *Axon Enterprise*. Moreover, unlike being haled before an unconstitutionally insulated administrative law judge—about which "the court of appeals can do nothing," because "[a] proceeding that has already happened cannot be undone," *Axon Enterprise*, 143 S. Ct. at 904—OSHA's regulatory and statutory interpretations *can* be undone. *See* 29 U.S.C. § 667(g) (allowing the circuit court to "modify or set aside in whole or in part the action of the Secretary").

**b.** The second *Thunder Basin* factor also weighs against district-court jurisdiction. Far from collateral to OSHA's withdrawal of approval, Plaintiffs' claims would be *integral* to any such withdrawal. Were OSHA to withdraw approval of South Carolina's State plan, based on a failure to meet or exceed federal penalty levels, Plaintiffs would undoubtedly argue that OSHA's regulations don't require as much—or that, if they did, then the 2016 amendment to 29 C.F.R. § 1902.4(c)(2)(xi) was unlawful. In other words, they would make the very claims that they have

---

[18] This is not to say that all constitutional claims fall outside of *Thunder Basin*. To the contrary, the Supreme Court has held that constitutional claims can be routed to circuit courts for *post hoc* review. Thus, in *Elgin*, the Court held that even the plaintiff's Equal Protection Clause claim had to go through the Merit System Protection Board, even though the MSPB couldn't hold the Selective Service Act unconstitutional. *Axon Enterprise*, 143 S. Ct. at 901.

brought here. Plaintiffs do not challenge "the structure or very existence of an agency," or claim "that an agency is wielding authority unconstitutionally," which the Supreme Court has deemed "collateral" and thus allowed to proceed in district court. *Axon Enterprise*, 143 S. Ct. at 902 (citing *Free Enterprise Fund*, 561 U.S. 477).

**c.** As to the third factor, agency expertise, it is hard to imagine more suitable subjects than OSHA's own regulations and the statute it has administered for more than 50 years. That easily distinguishes *Free Enterprise Fund* and *Axon Enterprise*, in which the Supreme Court held that agency expertise could not be lent to resolving structural constitutional challenges. *Axon Enterprise*, 143 S. Ct. at 905 (citing *Free Enterprise Fund*, 561 U.S. at 491). OSHA's decades-long "competence and expertise" can, and should, be brought to bear on Plaintiffs' claims, which involve "considerations of agency policy." *Id.* (quoting *Free Enterprise Fund*, 561 U.S. at 491). After all, "the point of special review provisions" is "to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Id.* at 901. That is clearly the case with respect to Plaintiffs' claims.

*    *    *

To summarize: where Congress vests *post hoc* review in circuit court, as it did in the OSH Act, that review "[g]enerally" is "exclusive." *Axon Enterprise*, 143 S. Ct. at 900 (quoting *Free Enterprise Fund*, 561 U.S. at 489). The Supreme Court recognized exceptions in *Free Enterprise Fund* and *Axon Enterprise*, where all three *Thunder Basin* factors called for it: the plaintiffs' structural constitutional claims could not be remedied after the fact; they were wholly collateral to the agency's enforcement; and they were outside the agency's expertise. None of those factors counsels an exception here, and the general rule should apply.

**B.      Even if the Court Had Jurisdiction, Counts I–III Would Have to Be Dismissed for Want of Any Independently Viable Claim.**

Counts I–III seek declaratory relief, presumably under the Declaratory Judgment Act, 28 U.S.C. § 2201. That statute provides that "[i]n a case of actual controversy," a court "may declare the rights and other legal relations of any interested party seeking such declaration." *Id.* As its language suggests, however, the DJA requires an independently viable claim before the Court can grant declaratory relief. *United States v. Payne*, 54 F.4th 748, 753 (4th Cir. 2022) ("The operation of the Declaratory Judgment Act is 'only procedural, leaving substantive rights unchanged.'" (quoting *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014)). That is, one cannot bring a "claim" under the DJA alone. *See Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 51–52 (4th Cir. 2016) (affirming "that, because the Declaratory Judgment Act does not supply a right of action in the absence of a valid substantive claim, dismissal of [a plaintiff's] declaratory judgment must necessarily follow dismissal of its [substantive] claim."); *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) ("[A] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)).

As demonstrated in Parts I and II above, Plaintiffs have no independent, viable claims. For that reason, Plaintiffs' pleas for declaratory relief must be dismissed as well. *See CGM, LLC*, 664 F.3d at 56 ("Here, CGM's substantive claims fail. Accordingly, so must its Declaratory Judgments Act claim.").

## IV.    PLAINTIFFS' PLEA FOR INJUNCTIVE RELIEF (COUNT VIII) SHOULD BE DISMISSED.

Count VIII seeks injunctive relief and is, therefore, best viewed as a prayer for relief and not an independent claim. But with no viable claims in which to ground an injunctive remedy—*see* Parts I and II above—Count VIII should be dismissed even if construed as its own "claim."

While not necessary to dismissing Count VIII, Defendants would reiterate (as they argued in *McMaster I*) that injunctive relief to prevent future harm is only appropriate where the "threatened injury" is "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court has emphasized that "allegations of possible future injury are not sufficient." *Id.* (cleaned up). In this case, Plaintiffs ostensibly fear something that has never happened in the 50-year history of the OSH Act: withdrawal of final approval of a State plan without that State's consent. When Plaintiffs sued last year, they grounded their fears in OSHA's elevation to a "finding" its yearly admonition that South Carolina had to increase its maximum fines. It has now been more than nine months since OSHA issued that finding, and it still has not even proposed to withdraw final approval of South Carolina's plan—the first step in a long process that would, once initiated, still give Plaintiffs plenty of time to seek injunctive relief. *See generally* 29 C.F.R. Part 1955 (Procedures for Withdrawal of Approval of State Plans). Plaintiffs also cited OSHA's proposal to revoke its Section 18(e) determination granting approval to Arizona's State plan, but that proposal has since been withdrawn. *See* 88 Fed. Reg. 9,976 (Feb. 15, 2023). Because OSHA's withdrawal is far from "certainly impending," *Clapper*, 568 U.S. at 409, Plaintiffs have no standing to seek injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed.


Dated:  May 22, 2023                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        BRAD P. ROSENBERG
                                        Special Counsel

                                        /s/ *Jason C. Lynch*
                                        JASON LYNCH (D.C. Bar No. 1016319)
                                        Trial Attorney

25

Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendants*