## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina, and SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING & REGULATION, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor; OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION; and DOUGLAS PARKER, in his official capacity as Assistant Secretary for Occupational Safety and Health, <br><br> *Defendants.* | Civil Action No.: 3:23-cv-1038-SAL <br><br><br> **PLAINTIFFS'** <br> **MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Henry McMaster, in his official capacity as Governor of the State of South Carolina, and the South Carolina Department of Labor, Licensing and Regulation ("LLR") move for summary judgment under Federal Rule of Civil Procedure 56.[1]

### INTRODUCTION

When Congress enacted the Occupational Safety and Health Act of 1970, Pub. L. 91-596, 84 Stat. 1590 (Dec. 29, 1970), to promote safe and healthy workplaces, it gave States two choices:

---

[1] Four introductory notes: *First*, under Local Civil Rule 7.04 (D.S.C.), a full explanation of the motion is provided here, so a separate memorandum would serve no useful purpose. *Second*, Secretary Chavez-DeRemer is automatically substituted as a defendant under Rule 25(d). *Third*, Defendants' Motion to Dismiss (ECF No. 12) is still pending, and Plaintiffs do not rehash any arguments from the briefing on that motion. And *fourth*, Plaintiffs are moving for summary judgment only in this case and not in *McMaster I* because Plaintiffs' Motion for Relief from Judgment and for Leave to File Amended Complaint remains pending there. *See* No. 3:22-cv-2603-SAL (D.S.C. Sept. 20, 2024), ECF No. 59. The arguments here, however, apply equally to the proposed amended complaint in *McMaster I*.

Let federal standards govern workplaces or run their own state plans. South Carolina accepted the invitation to have its own plan, and the State has successfully managed that plan for half a century.

For States like South Carolina that choose to run their own plan, that plan's standards and enforcement must "be at least as effective in providing safe and healthful employment and places of employment as" federal ones. 29 U.S.C. § 667(c)(2). This case asks whether a state plan with outcomes that have consistently resulted in workplaces as safe (or safer) than the national average can be forced to increase state civil penalties to match those of federal OSHA.

Defendants claim that the answer is *yes*, but the OSH Act and its regulations—not to mention the data—prove that the answer is *no*. The OSH Act aims to provide "safe and healthful employment and places of employment." If a state plan accomplishes that end (in other words, if it is *effective*), it satisfies the Act, no matter what its civil penalties are. The regulations confirm— such as by using the "nonexclusive" phrase "such as," *Stewart v. Abend*, 495 U.S. 207, 236–37 (1990)—that the federal-penalties thresholds are just one enforcement mechanism a state plan can employ.

At its core, this question comes down to how to interpret Congress's "at least as effective" command. Must the Court be controlled by past practice, as Defendants have suggested? Or must the Court focus on the text, as Plaintiffs contend?

Thankfully, the Supreme Court has answered this question: "[T]he text of the statute controls [a court's] decision." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994); *accord Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 269 (2019) ("the clear text of the statute controls this case"); *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 485 (2017) (Sotomayor, J., concurring) ("I agree with the majority that the statutory text compels today's result"). Or as Justice Kavanaugh recently put it,

"[t]ext controls over contrary historical practices." *United States v. Rahimi*, 602 U.S. 680, 718 n.2 (2024) (Kavanaugh, J., concurring). That methodological mandate means that the OSH Act and regulations do not require state penalties to match federal ones. The OSH Act and the regulations focus on the outcome: "safe and healthful" workplaces. They are not concerned with whether state plans have civil penalties that are at least equal to, if not greater than, the federal ones.

Beyond the OSH Act's and regulations' text, how Defendants went about trying to enforce this mandate on state civil penalties violated the Administrative Procedure Act. The 2016 Interim Final Rule that increased federal civil penalties just assumed that state penalties had to go up too, but that rule offered no explanation why (much less a compelling one). *See* Department of Labor Federal Civil Penalties Inflation Adjustment Act Catch-Up Adjustments, 81 Fed. Reg. 43,430 (July 1, 2016). Defendants' attempt to answer comments about this mandate was no more convincing in the 2017 adjustment to the federal penalties. *See* Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2017, 82 Fed. Reg. 5373 (Jan. 18, 2017). Not "giv[ing] adequate reasons for [an agency's] decision," of course, violates "[o]ne of the basic procedural requirements of administrative rulemaking." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

Defendants' procedural shortcomings do not stop there. They also include amending section 1902.4(c)(2)(xi) to add a cross-reference to the increased federal civil penalties. Far from a technical amendment as they strained to frame it, inserting that cross-reference into the regulation—while not removing "such as" or "in the Act"—was a substantive change that required notice-and-comment rulemaking.

Plaintiffs are therefore entitled to judgment as a matter of law. The Court should hold that the OSH Act and regulations mean what they say and that Defendants have violated the APA to

try to impose a mandate on the State Plan.

## **FACTUAL BACKGROUND**

### A.    **The South Carolina State Plan**

The OSH Act took effect in 1971, *see* § 34, 84 Stat. at 1620, and it required the Secretary of Labor to promulgate standards for safety and health in workplaces based on national-consensus or established-federal standards, *see* 29 U.S.C. § 655(a); *see also id.* § 652 (defining terms). To implement this congressional directive, the Secretary created OSHA, and to promote compliance, the OSH Act imposes federal civil (as well as criminal) penalties for violations of these standards. *See id.* § 666.

As an alternative to having employers in a State governed directly by these federal regulations, Congress gave States the option to create state plans. *See id.* § 667(b). The Secretary must approve a state plan if it meets certain criteria. One criterion is providing "for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and *the enforcement of which standards*) are or will be *at least as effective* in providing *safe and healthful employment and places of employment* as the standards promulgated" by OSHA. *Id.* § 667(c)(2) (emphasis added); *see also* 29 C.F.R. § 29.1902.1 *et seq.* (providing criteria and procedure for approval of state plans). If the Secretary finds that, after approval, the administration of a state plan fails "to comply substantially with any provision" of that plan, then the Secretary may withdraw his approval. 29 U.S.C. § 667(f).

The Secretary gave South Carolina initial approval to operate the State Plan in 1972. *See* South Carolina Developmental Plan, 37 Fed. Reg. 25,932 (Dec. 6, 1972). The State "submitted supplements to the plan involving developmental changes" over the next few years. Advanced Notice of Proposed Supplements to Approved Plan, 40 Fed. Reg. 3,606, 3,606 (Jan. 23, 1975).

4

One change included an increase in State Plan's the civil penalties to the levels set in the OSH Act. *See* 1973 S.C. Acts No. 311, § 1 (amending section 13 of 1971 S.C. Acts No. 379, which had set penalties at $100 and $500, depending on the type of violation). The State completed all developmental steps in 1976. *See* South Carolina; Certification of Completion of Developmental Steps, 41 Fed. Reg. 32,424 (Aug. 3, 1976). And the State Plan received final approval in 1987. *See* South Carolina State Plan; Final Approval Determination, 52 Fed. Reg. 48,103 (Dec. 18, 1987).

South Carolina has successfully administered and effectively enforced the State Plan all this time. Compl. ¶ 39, ECF No. 1. Although annual Federal Annual Monitoring Evaluation Report ("FAME Reports") have noted issues for the State to address, OSHA has never initiated any formal revocation proceedings against the State Plan.

### B.    Federal civil penalties for violations of workplace safety and health standards

The OSH Act established maximum amounts of federal civil penalties for violations. *See* OSH Act, § 17, 84 Stat. at 1606–07. For example, willful or repeated violations could result in a fine of up to $10,000 per violation. *Id.* § 17(a), 84 Stat. at 1606. Serious violations were subject to penalties of up to $1,000 per violation. *Id.* § 17(b), 84 Stat. at 1606. And failing to post information for employees about workplace safety and health also carried a penalty of up to $1,000. *Id.* § 17(i), 84 Stat. at 1607.

Two decades later, Congress amended these penalties in the Omnibus Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388 (Jan. 23, 1990). Congress changed the $10,000 cap on federal penalties for willful or repeated violations to $70,000 and the cap on other penalties (such as for serious violations and failure to post information) to $7,000. *See id.* Title III, § 3101, 104 Stat. at 1388-29. These federal penalty thresholds remain in the United States Code today. *See* 29 U.S.C. § 666.

To account for inflation, Congress enacted the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, 104 Stat. 890 (Oct. 5, 1990) ("1990 Federal Penalties Act"). The 1990 Federal Penalties Act required most federal agencies to adjust their civil penalties every five years. *See id.* § 4, 104 Stat. at 891. OSHA, however, was one of a few agencies that Congress later exempted from this requirement. *See* Debt Collection Improvement Act of 1996, § 31001(s)(1), Pub. L. 104-134, 110 Stat. 1321-358, 1321-373 (Apr. 26, 1996).

OSHA lost this exemption in the Bipartisan Budget Act of 2015, which included the Federal Civil Penalties Inflation Adjustment Act of 2015, Pub. L. 114-74, Title VII, 129 Stat. 584, 599 (Nov. 2, 2015) ("2015 Federal Penalties Act"). The 2015 Federal Penalties Act shortened the frequency of inflation adjustments from five years to one. *Id.* § 701(b)(1)(A), 129 Stat. at 599 (amending 28 U.S.C. § 2461 note). It also required a one-time adjustment to the federal civil penalties "through an interim final rulemaking" process. *Id.* § 701(b)(1)(D), 129 Stat. at 599. After that, the 2015 Federal Penalties Act requires OSHA to make annual adjustments to these federal penalties for inflation, and it exempts these adjustments from § 553's notice-and-comment requirements. *Id.* § 701(b)(1)(D), 129 Stat. at 599.

Consistent with the 2015 Federal Penalties Act, OSHA under the Obama administration issued an interim final rule in 2016. 2016 Interim Final Rule, 81 Fed. Reg. 43,430. OSHA has issued inflation adjustments for federal civil penalties for every year since then. *See* Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2025, 90 Fed. Reg. 1854 (Jan. 10, 2025); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2024, 89 Fed. Reg. 1810 (Jan. 11, 2024); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2023, 88 Fed. Reg. 2210 (Jan. 13, 2023); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual

Adjustments for 2022, 87 Fed. Reg. 2328 (Jan. 14, 2022); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2021, 86 Fed. Reg. 2964 (Jan. 14, 2021); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2020, 85 Fed. Reg. 2292 (Jan. 15, 2020); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2019, 84 Fed. Reg. 213 (Jan. 23, 2019); Department of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2018, 83 Fed. Reg. 7 (Jan. 2, 2018); 2017 Adjustment, 82 Fed. Reg. 5373.

**C.     State civil penalties for violations of workplace safety and health standards**

Since the Secretary approved the State Plan, South Carolina law has included civil (and criminal) penalties for violations of state health and safety standards. At first, the maximum civil penalties were $1,000 and $500, depending on the type of violation. *See* 1971 S.C. Acts No. 379, § 13 (codified at S.C. Code § 40-273 (1962)). The South Carolina General Assembly increased those statutory caps to $10,000 and $1,000. *See* 1973 S.C. Acts No. 311, § 1. The General Assembly again increased South Carolina's caps on statutory civil penalties to $70,000 and $7,000 following the congressional increase of federal penalties in 1990. *See* 1991 S.C. Acts No. 25 (codified at S.C. Code Ann. § 41-15-320).

South Carolina's penalties have remained unchanged since 1991.

**D.     Defendants demand increases to state civil penalties**

In the 2016 Interim Final Rule, OSHA stated that state plans must "increase their penalties to reflect the federal penalty increases at the state levels in order to maintain this 'at least as effective' status."[2] 81 Fed. Reg. at 43,446. OSHA also decreed that "State Plans will also be

---

[2] Defendants have technically demanded that state penalties be "at least as high as OSHA's maximum and minimum penalty levels." 2017 Adjustment, 82 Fed. Reg. at 5375. State plans have not, however, historically set penalty levels higher than the federal ones, so Plaintiffs more often

required to increase their penalties regularly in the future to maintain at least as effective penalty levels." *Id.* at 43,447. The 2016 Interim Final Rule did not discuss how the text of the OSH Act or any other regulation compels matching penalties, and the only rationale in the 2016 Interim Final Rule for requiring increased penalties was a "deterrence principle[]" that "rational actors are *less likely* to commit violations when faced with higher penalties." *Id.* at 43,445.

In this Interim Final Rule, Defendants also amended section 1902.4(c)(2)(xi). They added a new end to this provision, so that it required state plans to have "effective sanctions against employers who violate State standards and orders, such as those set forth in the Act, *and in 29 CFR 1903.15(d).*" 29 C.F.R. § 1902.4(c)(2)(xi) (emphasis added). Section 1903.15(d) is where the annual increases to the federal civil penalties are found.

OSHA offered more commentary on its position in the 2017 Adjustment. As for penalties having to match, the 2017 Adjustment insisted that "OSHA's long-standing position" is "that 'at least as effective,' in this context, means that State Plans must have maximum and minimum penalty levels that are at least as high as OSHA's maximum and minimum penalty levels." 2017 Adjustment, 82 Fed. Reg. at 5375; *see also id.* at 5376 ("historically, State Plans have matched OHSA's maximum and minimum penalties identically"). As for inserting section 1903.15(d) into section 1902.4(c)(2)(xi), the 2017 Adjustment characterized this change a "technical amendment" or "pointer" that OSHA had "the inherent authority" to make. *Id.* at 5376.

In the later annual adjustments, OSHA continued invoking 29 U.S.C. § 667(c)(2), 29 C.F.R. § 1902.4(c)(2)(xi), and 29 C.F.R. § 1902.37(b)(12) as the basis for state plans having to make annual adjustments to their civil penalties. *See, e.g.*, 2025 Adjustment, 90 Fed. Reg. at 1857.

After these promulgations and specific to South Carolina's State Plan, OSHA issued its FY

---

use the more succinct and real-world language that penalties must "match" throughout this Motion.

2021 FAME Report, *available at* https://tinyurl.com/bt45kjv8, which claimed that state plans "were required to adopt the initial maximum penalty level increase and the subsequent annual increases." 2021 FAME Report, at 18. The 2021 FAME Report included a finding that the "State Plan failed to adopt OSHA's initial FY 2016 maximum and minimum penalty increase and subsequent annual penalty amount increases." *Id.*

Shortly after OSHA issued the 2021 FAME Report, the State challenged the mandate to increase civil penalties. *See McMaster v. U.S. Dep't of Lab.*, No. 3:22-cv-2603-SAL (D.S.C.). Between that case and this one, the State has been contesting the mandate ever since. OSHA continues to include the un-increased civil penalties as a finding in its FAME Report. *See* 2023 Federal Annual Monitoring Evaluation Report for South Carolina, *available at* https://tinyurl.com/bt45kjv8 (most recent FAME Report).

Findings in a FAME Report are significant because they are "limited to those issues that warrant corrective action by the State Plan to ensure it is [at least as effective]" as the federal standards. OSHA, *State Plan Policies and Procedures Manual* 74 (May 6, 2020), https://tinyurl.com/2p93wtfv. A finding is the first step OSHA takes if it intends to revoke a state plan's final approval. *See* 29 C.F.R. § 1902.47 *et seq.*; *see also, e.g.*, Arizona State Plan for Occupational Health and Safety; Proposed Reconsideration and Revocation, 87 Fed. Reg. 23,783 (Apr. 21, 2022).

## LEGAL STANDARD

Summary judgment should be granted whenever, "viewing the evidence in the light most favorable to the nonmoving party and making justifiable inferences in their favor," *United States v. Stover*, 131 F.4th 199, 202 (4th Cir. 2025), "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). When a "dispute ultimately turns entirely on a question of statutory

interpretation, the district court properly proceeded to resolve the case on summary judgment." *United States v. West Virginia*, 339 F.3d 212, 214 (4th Cir. 2003).

## ARGUMENT

I.    **State civil penalties do not have to match federal civil penalties.**

Defendants cited three authorities in the 2016 Interim Final Rule for their mandate on the State Plan: (1) 29 U.S.C. § 667(c)(2); (2) 29 C.F.R. § 1902.4(c)(2)(xi); and (3) 29 C.F.R. § 1902.37(b)(12). *See* 81 Fed. Reg. at 43,438, 43,446. None of these provisions, however, supports that mandate. Neither the OSH Act nor the regulations require States to adopt civil penalties that are "at least has high as" federal civil penalties. 2017 Adjustment, 82 Fed. Reg. at 5375. Plaintiffs are therefore entitled to judgment on Counts One, Two, and Three of their Complaint.

### A.    **Section 667(c)(2) does not require state penalties to match federal penalties.**

**1.** The inquiry "begin[s] with the text." C*ity & Cnty. of San Francisco, Cal. v. Env't Prot. Agency*, 145 S. Ct. 704, 715 (2025). The OSH Act requires that state plans must "provide[] for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 655 of this title which relate to the same issues." 29 U.S.C. § 667(c)(2). Critical to this case is Congress's directive that "the enforcement" of state standards be "at least as effective" as federal standards and enforcement "in providing safe and healthful employment and places of employment."

This language makes three things clear, which combine to doom Defendants' mandate. *First*, state standards must be enforced. "Enforcement" involves a "sanction" for not "fulfil[ing]" "a law, demand, [or] obligation." I *Compact Edition of the Oxford English Dictionary* 865 (1971);

*cf. BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 237 (2021) (when interpreting a statute, a court "generally seeks to discern and apply the ordinary meaning of its terms at the time of their adoption"). Sanctions can come in many forms, and one is a civil penalty. *E.g.*, *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 778 (1994).

*Second*, section 667(c)(2) requires that enforcement of state standards be "effective." "Effective" means to "attend with result." I *Compact Edition of the Oxford English Dictionary* 835 (1971); *accord Random House Dictionary of the English Language, Unabridged Ed.* 455 (1973) ("effective" means "adequate to accomplish a purpose; producing the intended or expected result"); *Webster Universal Dictionary* 446 (1970) ("effective" means "producing a result, bringing about an intended result"). That is, enforcing state standards must achieve something.

*Third*, that something is a workplace that is as "safe and healthful" as a workplace governed by federal standards. Civil penalties are not about how much the government might collect in revenue, as OSHA discussed in the 2016 Interim Final Rule. *See* 81 Fed. Reg. at 43,446 (Table E showing projected increase collected by state plans if civil penalties were increased). Nor are they about penalties for penalties' sake.

Combining these three pieces, section 667(c)(2) requires that state plans have sanctions that achieve a safe workplace. Penalties are, of course, one way of enforcing workplace safety standards. But Congress did not require—explicitly or implicitly—that state penalties match federal ones. A state plan that has lower civil penalties than the federal civil penalties but has workplaces just as safe (if not safer[3]) therefore complies with the OSH Act, and that state plan

---

[3] Take the State Plan as an example. Beyond the maximum amounts for civil penalties, there are other differences with federal enforcement. One example is determining what fines should be in a particular case and whether initial fines should later be reduced. *Compare* OSHA-Approved S.C. OSHA Field Operations Manual, chapter VI, https://tinyurl.com/5fs786hb, *with* Federal OSHA Field Operations Manual, chapter 6, https://tinyurl.com/4vd5mae7. Despite those

satisfies Congress's decree. Ultimately, a state plan must simply have "standards" that are "at least as effective in providing safe and healthful employment" as the federal standards—not "penalties" that are "at least as high as" federal penalties.

Of course, if Congress had wanted state and federal civil penalties to be the same, Congress "could have easily said so." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 705 (2022). Congress knew how to do that. For instance, Congress did exactly that in a law governing pipeline safety. Congress required state programs to "enforce safety standards of the authority under a law of the State by injunctive relief and civil penalties *substantially the same as*" federal penalties. 49 U.S.C. § 60105(b)(7) (emphasis added) (enacted by Pub. L. 103-272, § 1(e), 108 Stat. 745, 1310, (July 5, 1994)). That difference matters because Congress often uses existing statutory language when it seeks to accomplish similar goals. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998). And Congress is "presume[d]" to "know[] about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988). In other words, if "at least as effective as" means that state and federal penalties must match when States choose to regulate a particular field, Congress could have used that language in the pipeline-safety statute two decades after it enacted the OSH Act. But Congress didn't. Instead, it was far more direct in its mandate on state penalties.

**2.** This conclusion that penalties do not have to match is confirmed by the structure of the OSH Act. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 542 (2021) (courts may use "[t]he statutory structure" to "confirm[] the textual reading"). The OSH Act seeks to give States flexibility to promote workplace safety. In its findings, Congress "declare[d] it to be its purpose and policy . . . to assure so far as possible every working man and woman in the Nation safe and

---

differences, according to data from the Bureau of Labor Statistics, South Carolina has had fewer instances of workplace injuries and illness than the national average for at least nine consecutive years. *See infra* Part II.A.2.

healthful working conditions . . . by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States . . . to conduct experimental and demonstration projects in connection therewith." 29 U.S.C. § 651(b)(11); *see also Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 160 (4th Cir. 2023) (quoting section 651(b)(11)). Congress also declared a policy that States have "an effective enforcement program," specifying only that the program may not give "advance notice of inspections" and that the program have "sanctions" for violations. *Id.* § 651(b)(10). Forcing the States to have identical penalties to the federal ones undermines the congressional goal of letting States serve "as laboratories for devising solutions to difficult legal problems." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015).

It's not just Congress (though Article I's Vesting Clause means that Congress's word is enough). OSHA itself has recognized the need for state plans to enjoy this flexibility. "OSHA agrees that the principle that State plan requirements are not required to be identical" to the federal standards "is an important statutory feature of the State plans program." Department of Labor Changes to State Plans: Revision of Process for Submission, Review and Approval of State Plan Changes, 67 Fed. Reg. 60,122, 60,123 (Sept. 25, 2002). OSHA "acknowledge[d] the important principle that State plan requirements need not be identical" to federal ones, and "OSHA has repeatedly acknowledged the latitude of States to develop 'at least as effective' requirements." *Id.*

Mandating that state plans have identical civil penalties conflicts with the OSH Act's "important statutory feature" and undermines the "important principle" of flexibility. *Id.* Although OSHA's statements there were in the context of state standards, there's no principled distinction between standards and penalties when it comes to States' latitude to innovate. In fact, the more flexibility state plans have, the more likely they are to find better and more effective ways to ensure

safe workplaces.

**3.** Defendants can find no refuge in the history of civil penalties or OSHA's "long-standing position" that state penalties must match federal ones. 2017 Adjustment, 82 Fed. Reg. at 5375.

The Court owes no automatic deference to an agency's interpretation of a statute. The Court instead "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Simply saying "that's how it's always been" isn't good enough. Perhaps States thought the old federal penalty levels were good ones. Perhaps States had enough on their plates in getting plans set up that it was not worth a fight with OHSA over the penalty amounts. Whatever the reason, that the State has not challenged Defendants' demand that penalties must match or has increased the State's penalties to match federal ones is no substitute for textual analysis. Defendants must show that the OSH Act's text supports their position.

Nor does the history or OSHA's longstanding position account for two other important flaws in Defendants' position. One, it does not invoke any binding legal authority for the claim that state penalties must match federal ones. Two, not challenging something does not mean the government's practice is lawful. Presumably Defendants would not assert that segregated schools were constitutional because they had been that way for decades before Oliver Brown and Harry Briggs sued over where their children could go to school. *See Brown v. Bd. of Educ.*, 347 U.S. 483 (1954).

And while some "respect" may be "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time," it is "just that": respect. *Loper Bright Enters.*, 603 U.S. at 386. "The views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede

it. . . . Otherwise, judicial judgment would not be independent at all." *Id.* Judges "have always been expected" to exercise such judgment. *Id.* at 412. Doing so means that the "[t]ext controls over contrary historical practices," *Rahimi*, 602 U.S. at 718 n.2 (Kavanaugh, J., concurring), because the "text"—not past practice—is what "makes it through the constitutional processes of bicameralism and presentment," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 490 (2018) (Thomas, J., concurring). Past practice alone does not give Defendants the ability to demand something of the State Plan that Congress did not.

The OSH Act does not require state civil penalties to match federal ones. No amount of historical practice can change the Act's plain text.

**B.       Section 1902.4(c)(2)(xi) does not require state penalties to match federal one.**

Just as the OSH Act does not require these penalties to match, Defendants have never enacted any regulation that requires as much. (This case does not raise the issue of whether the OSH Act would permit Defendants to do so, even if they managed to comply with all the Administrative Procedure Act's rulemaking requirements, and Plaintiffs do not concede that Defendants have that authority.) In the 2016 Interim Final Rule, Defendants pointed to two regulations for their mandate on state civil penalties, but neither regulation requires state civil penalties to match federal ones.

Defendants first cited 29 C.F.R. § 1902.4(c)(2)(xi). *See* 81 Fed. Reg. at 43,438–39. This regulation requires that the State Plan "[p]rovide[] effective sanctions against employers who violate State standards and orders, such as those set forth in the Act, and in 29 CFR 1903.15(d)." 29 C.F.R. § 1902.4(c)(2)(xi). Two parts of this regulation stand out. The first is that it requires the State Plan to have "effective sanctions." Not "identical sanctions." Thus, everything that's true of "effective" in section 667(c)(2) is true of "effective" in this regulation.

The second is section 1902.4(c)(2)(xi)'s use of "such as." That phrase introduces a "nonexclusive" list of what effective sanctions might be. *Stewart*, 495 U.S. at 236–37; *accord Bragdon*, 524 U.S. at 639 (discussing ADA regulations in 45 C.F.R. § 84.3(j)(2)(ii): "As the use of the term 'such as' confirms, the list is illustrative, not exhaustive."); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985) (a list that used "such as" "was not intended to be exhaustive"); *NISH v. Cohen*, 247 F.3d 197, 204 (4th Cir. 2001) ("NISH's reliance on [the Federal Acquisition Regulation] is misplaced, however, because FAR—by use of the phrase 'such as the following'—makes clear that its list is not exhaustive."); *United States v. Walker*, No. 2:18-CR-37-FL-1, 2019 WL 4412909, at *5 (E.D.N.C. Sept. 13, 2019) (explaining that the list of proceedings in Federal Rule of Evidence 1101(d)(3) that is introduced by "such as" is "not an exhaustive list"); *Bulk Oil (ZUG) A.G. v. Sun Co.*, 583 F. Supp. 1134, 1138 (S.D.N.Y. 1983) ("the use of the phrase 'such as' in the quoted passage [of a judicial decision] suggests that the listing was not intended to be exhaustive"); *see also* II *Compact Edition of the Oxford English Dictionary* 3137 (1971) ("such as" is "used to introduce examples of a class"). Section 1902.4(c)(2)(xi) therefore leaves no doubt that there may be other—nonidentical—state penalties that also would be as effective at promoting safe workplaces as federal sanctions.[4]

**C.    Section 1902.37(b)(12) does not require state penalties to match federal ones.**

The second regulation Defendants cited as part of their mandate on state civil penalties is 29 C.F.R. § 1902.37(b)(12). *See* 81 Fed. Reg. at 43,446. That section requires a state plan to "propose[] penalties in a manner at least as effective as under the Federal program, including the

---

[4] Defendants cannot characterize the 2016 Interim Final Rule as some agency interpretation of section 1902.4(c)(2)(xi). *Auer* deference (assuming it's still good law after *Loper Bright*) is warranted only when "the regulation is genuinely ambiguous" after applying "traditional tools of statutory construction." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (internal quotation mark omitted). Those tools confirm that the regulation provides only *examples* of "effective" penalties.

proposing of penalties for first instance violations and the consideration of factors comparable to those required to be considered under the Federal program." 29 C.F.R. § 1902.37(b)(12). This one also does not require state penalties to match federal penalties.

Section 1902.37(b)(12) has existed in this same form since 1975, *see* Procedures for Determinations under Section 18(e) of the Occupational Safety and Health Act of 1970, 40 Fed. Reg. 54,780, 54,784 (Nov. 26, 1975), and, like the others that Defendants have invoked, requires only that state penalties be "effective." "Effective" for what? For safe workplaces. Once again, "effective" does not mean "identical."

Looking further at the text, nothing else supports a mandate on the amount of state civil penalties. The regulation requires "the proposing of penalties for first instance violations." 29 C.F.R. § 1902.37(b)(12). Whether to impose a penalty is a different question than how much the penalty may be. The regulation also requires "consideration of factors comparable to those required to be considered under the Federal program" in imposing penalties. *Id.* What factors to consider in deciding whether to impose a penalty should be is, again, a different question from the maximum amount the law permits a penalty to be.

\*    \*    \*

A "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because section 667(c)(2), section 1902.4(c)(2)(xi), and section 1902.37(b)(12) do not require state civil penalties to match federal civil penalties, Defendants' reliance on them in the 2016 Interim Final Rule (and in the annual adjustments that followed) was "not in accordance with law." *Id.* The Court should thus hold Defendants' mandate in the 2016 Interim Final Rule unlawful and set it aside.

17

## II.    The 2016 Interim Final Rule fails to give adequate reasons for mandating that state civil penalties match federal ones.

Assume for the sake of argument that the OSH Act permits Defendants to require state civil penalties to match federal ones. Even then, Defendants' mandate in the 2016 Interim Final Rule that the State Plan have civil penalties that match the federal ones must be set aside because that mandate is arbitrary and capricious, as alleged in Count Four.[5]

"One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars*, 579 U.S. at 221. An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). Agency action falls short of this standard and thus violates section 706(2)(A) whenever the agency "entirely failed to consider an important aspect of the problem[ or] offered an explanation for its decision that runs counter to the evidence before the agency." *Nat'l Audubon Soc'y v. United States Army Corps of Engineers*, 991 F.3d 577, 583 (4th Cir. 2021). Although judicial review in this context is "highly deferential," "a court should take care under any level of deference to not conduct judicial review with simply a 'rubber stamp.'" *Id.*

### A.    Defendants' demand in the 2016 Interim Final Rule that state civil penalties must match federal civil penalties is arbitrary and capricious.

The 2016 Interim Final Rule demanded that state plans increase their civil penalties to match federal ones, *see* 81 Fed. Reg. at 43,445–47, but nowhere does the rule explain *why*. That

---

[5] A quick note on the relationship between sections 1902.4(c)(2)(xi) and 1902.37(b)(12) and Count Four: As explained in Part I, those regulations do not require state civil penalties to match federal ones. The 2016 Interim Final Rule is the first time that Defendants have explicitly demanded that state civil penalties must match federal ones. Plaintiffs therefore focus their arbitrary-and-capricious argument on the 2016 Interim Final Rule.

lack of explanation is fatal.

**1.** To begin, the 2016 Interim Final Rule includes no analysis of how section 667(c)(2) (or sections 1902.4(c)(2)(xi) or 1902.37(b)(12), for that matter) might permit Defendants to mandate that state penalties match federal ones. It's almost as if Defendants assumed a mandate on state penalties already existed (whether in the OSH Act or in the regulations). *See* 81 Fed. Reg. at 43,438–39. Defendants are wrong. Neither the OSH Act nor the regulations require that of state civil penalties. *See supra* Part I.

Nor does the 2016 Interim Final Rule analyze why the penalties should have to match. At most, the 2016 Interim Final Rule includes a single justification for higher (but not necessarily matching) penalties: Higher penalties are more likely to deter violations. *Id.* at 43,445. Maybe. But maybe not. The 2016 Interim Final Rule does not, for instance, explain how high penalties must be to serve as that deterrent. Or discuss how high is enough of a deterrent. One million dollars, after all, would theoretically be a greater deterrent than $161,131. *See* 2025 Adjustment, 90 Fed. Reg. at 1865. For another, the 2016 Interim Final Rule never wrestles with arguments (such as over the death penalty, to take a non-workplace example) that stiffer penalties do not always deter wrongdoing. And for a third, the 2016 Interim Final Rule never contemplates that higher penalties might motivate challenges in the way that lower penalties might entice prompt payment and compliance. Nor does it consider how those potential challenges to higher penalties might push regulators not to impose them—like a state trooper might not want to write a speeding ticket for $1000 that would almost certainly mean a court date but he could easily write a $100 ticket that a driver would be likely just to pay and move on with life.

**2.** Even if there's some merit to Defendants' generalized deterrence theory, it's unclear why *matching* penalties are necessary to meet section 667(c)(2)'s requirement that workplaces

regulated by a state plan are as safe as workplaces regulated by federal standards. This is so for at least two reasons. *First*, Defendants' nationwide mandate ignores that the power of a dollar varies across the country. New York City is more expensive than Spartanburg; Los Angeles is more expensive than Aiken. In other contexts, the federal government has recognized as much. It's why the federal government uses locality pay. *See* U.S. Office of Personnel Management, *Policy, Data, Oversight: Pay & Leave: 2025 General Schedule Locality Pay Tables* (last visited May 23, 2025), https://tinyurl.com/y4kw7psr; *see also* 5 U.S.C. § 5305 (special pay authority). If the goal of forcing state plans to increase their civil penalties is to increase the deterrence effect, Defendants have issued a much harsher threat to employers in Mississippi and South Carolina than employers in Illinois and Hawaii.

*Second*, experience teaches that state civil penalties do not have to match federal penalties for state workplaces to "be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated" by OSHA. 29 U.S.C. § 667(c)(2). South Carolina's experience over the past nine years proves it. Data from the Bureau of Labor Statistics show fewer workplace injuries and illnesses since 2015 in South Carolina than the national average:

*Employer-Reported Workplace Injuries and Illnesses*
*(per 100 full-time workers, all sectors – private only)*

| Year | South Carolina | Federal |
|------|----------------|---------|
| 2015 | 2.5 | 3.0 |
| 2016 | 2.5 | 2.9 |
| 2017 | 2.5 | 2.8 |
| 2018 | 2.4 | 2.8 |
| 2019 | 2.4 | 2.8 |
| 2020 | 2.1 | 2.7 |

| 2021 | 2.2 | 2.7 |
|------|-----|-----|
| 2022 | 2.3 | 2.7 |
| 2023 | 1.9 | 2.4 |

Bureau of Labor Statistics, *I&I Tables 1 and 6, South Carolina, 2015–2023* (data available from LLR's website; *e.g.*, 2023 data: https://tinyurl.com/3ctn7zmj; 2024 data will not be available until November 2025). Yet since 2016, the State Plan's civil penalties have been lower than the federal civil penalties. So a State can satisfy the OSH Act's mandate without having civil penalties that are the same as the federal penalties.

On top of showing that matching penalties aren't necessary, this data also undermines Defendants' assumption that higher penalties will make workplaces safer. South Carolina's civil penalties have been the same since August 1, 2016, when the increase in the federal penalties took effect. *See* 81 Fed. Reg. at 43,430. Since then, the country has suffered about 33% inflation. *See* Bureau of Labor Statistic, *CPI Inflation Calculator*, https://tinyurl.com/4scuamxu ($100 in Aug. 2016 has the buying power of $133.19 in Apr. 2025). Despite this effective lowering of the State Plan's civil penalties, workplaces across South Carolina have become safer. Higher civil penalties therefore are not the talisman Defendants appear to believe they are.

Defendants gain nothing by pointing out that the 2016 Interim Final Rule did discuss that higher civil penalties means more revenue for government. *See* 81 Fed. Reg. at 43,446. The OSH Act does not make how much the government collects a factor. Penalties should be based on "the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j). When an "agency relie[s] on factors that Congress has not intended it to consider," its action is arbitrary and capricious. *Nat'l Audubon Soc'y*, 991 F.3d at 583. Put differently, considering the increase in government revenue as a factor only makes the 2016 Interim Final Rule more flawed.

In the end, the fundamental question is not the amount of the penalty, but whether the State Plan's standards and enforcement result in workplace safety and health, as compared to workplaces governed by the federal standards and enforcement. If so, enforcement of the State Plan is at least as effective as enforcement of the federal standards and thus satisfies the OSH Act. The 2016 Interim Final Rule considers none of this. And "where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars*, 579 U.S. at 221 (citing 5 U.S.C. § 706(2)(A)).

**3.** If there were any doubt, consider a counterfactual: Suppose a state plan had *higher* civil penalties that the federal ones, but that State still had more workplace injuries and illnesses than the national average. Defendants surely would not consider that state plan to provide "places of employment" that were as "safe and healthful" as the workplaces governed by federal standards and penalties. 29 U.S.C. § 667(c)(2). The focus of section 667(c)(2) therefore isn't the penalty amounts. The focus is whether workplaces are safe and healthy, whatever a state plan's enforcement mechanisms.

**B.       The 2017 Adjustment does not save the 2016 Interim Final Rule.**

Because the 2016 Interim Final Rule did not permit comments before taking effect, Defendants used the 2017 Adjustment to respond to the comments they received about the 2016 Interim Final Rule. But Defendants cannot successfully fall back on the 2017 Adjustment to justify the mandate on state civil penalties.

**1.** Defendants offered two responses to comments on whether state civil penalties must match federal penalties. *One*, they pointed to "OSHA's long-standing position that 'at least as effective,' in this context, means that State Plans must have maximum and minimum penalty levels that are at least as high as OSHA's maximum and minimum penalty levels," 82 Fed. Reg. at 5375,

and that state civil penalties had "historically . . . matched" federal ones, *id.* at 5376. But again, historical practice cannot replace statutory analysis.

And *two*, beyond the statutory text, Defendants observed that OSHA's regulations "address only the maximum and penalty levels" but "do not address penalties finally assessed or the methodology involved in calculating assessed penalties." 82 Fed. Reg. at 5376. This assertion undermines Defendants' deterrence rationale. As OSHA admitted, *id.*, a state plan need not assess the maximum penalties to satisfy the "at least as effective" standard. Yet that undercuts Defendants' deterrence theory: If a state plan consistently imposes less than the maximum penalty, employers will (effectively) know the legal maximum penalty is not actually the penalty they will face.

**2.** In pushing their "deterrence requires higher penalties" theory, Defendants invoked the 1990 and 2015 Federal Penalties Acts. *See id.* These Acts provide no help because they are about *federal* penalties. Not *state* penalties.

The 2015 Federal Penalties Act amended sections 4, 5, and 6 of the 1990 Federal Penalties Act. *See* 2015 Federal Penalties Act, § 701, 129 Stat. at 599–600. The 2015 Federal Penalties Act did *not* amend section 3 of the 1990 Federal Penalties Act. That is critical because section 3 sets three criteria to qualify as "civil monetary penalties" that may be increased under those Acts. State civil penalties meet none of them.

One, these penalties must have "a maximum amount provided for by Federal law." 1990 Federal Penalties Act, § 3(2)(A)(ii), 104 Stat. at 890. State penalties are (unsurprisingly) not found in federal law. They exist in state law. *See* S.C. Code Ann. § 41-15-320.

Two, these penalties must be "assessed or enforced by an agency pursuant to Federal law." 1990 Federal Penalties Act, § 3(2)(B), 104 Stat. at 890. An "agency" is "an Executive agency as

defined under section 105 under title 5," *id.* § 3(1), 104 Stat. at 890, which in turns defines an "Executive agency" as an "Executive department, a Government corporation, and an independent establishment," 5 U.S.C. § 105. LLR (like any state agency) falls outside this definition.

And three, these penalties must be "assessed or enforced pursuant to an administrative proceeding or a civil action in federal courts." 1990 Federal Penalties Act, § 3(2)(C), 104 Stat. at 890. Neither OSHA nor the federal courts enforce the State Plan's civil penalties.

One other thing confirms that these Federal Penalties Acts cannot, on their own, require a change to state penalties. The 1990 Federal Civil Penalties Act required the President to prepare a report to Congress that included "each civil monetary penalty as defined under section 3(2)." § 4(1), 104 Stat. at 891. President George H.W. Bush delegated this task to the Office of Management and Budget. *See Memorandum of May 3, 1991: Reports Required by Sections 4 and 6 of the Federal Civil Penalties Inflation Adjustment Act of 1991*, 56 Fed. Reg. 21,911 (May 10, 1991). OMB issued its report in July 1991. That report included only six civil penalties from OSHA, each of which was found in 29 U.S.C. § 666. *See* Office of Management and Budget, *Civil Monetary Penalty Assessments and Collections: 1990 Report to Congress and Civil Monetary Penalty Inflation Adjustment Report*, Ex. 1: Civil Monetary Penalty Authorities Identified by Federal Agencies, at 17–18 (Washington, D.C. July 1991). The report said nothing about state civil penalties.

Congress could have given Defendants the authority to require state civil penalties to match federal penalties in the Federal Penalties Acts (or, for that matter, in the OSH Act). But Congress did not do so. Defendants cannot use a law about increasing federal civil penalties to impose a corresponding policy about state civil penalties that Congress did not adopt. Just as courts may not "rewrite the laws passed by Congress and signed by the President," *Nasrallah v. Barr*, 590 U.S.

573, 583 (2020), an "agency cannot rewrite a statute just to serve a perceived statutory 'spirit,'" *Landstar Exp. Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 500 (D.C. Cir. 2009).

### III.     The 2016 Interim Final Rule illegally amended section 1902.4(c)(2)(xi).

The 2015 Federal Penalties Act required Defendants to use "an interim final rulemaking" to "adjust civil monetary penalties." Title VII, § 701(b)(1)(D), 129 Stat. at 599. And Defendants did that in the 2016 Interim Final Rule. *See* 81 Fed. Reg. at 43,459 (listing increased federal civil penalties in 29 C.F.R. § 1903.15(d)). But that's not all Defendants did. They also added the language "and in 29 CFR 1903.15(d)" to the end of section 1902.4(c)(2)(xi). *See* 81 Fed. Reg. at 43,438–39. That addition violated the Administrative Procedure Act's notice-and-comment requirement, as Plaintiffs allege in Count Six.

Defendants lacked the authority to make this change to section 1902.4(c)(2)(xi) without going through the APA's notice-and-comment process. *See* 5 U.S.C. § 553(b). They acknowledged that the 2016 Interim Final Rule was based on the 2015 Federal Penalties Act. 81 Fed. Reg. at 43,430. And they recognized that the 2015 Federal Penalties Act required OSHA "to publish an initial 'catch-up adjustment' through an interim final rule" and that good cause existed for an interim final rule because 2015 Federal Penalties Act "provides a clear formula for adjustment of the civil penalties, leaving little room for discretion." *Id.* at 43,430–31.

Adding section 1903.15(d) to section 1902.4(c)(2)(xi) was not applying "a clear formula." It was not simple arithmetic, nor was it an update of existing federal civil penalties. Instead, it was a substantive addition to section 1902.4(c)(2)(xi). And it was not "technical amendment[]" that Defendants had the "inherent authority to make." 2017 Adjustment, 82 Fed. Reg. at 5376; *see also id.* ("There is no need for notice and comment on that type of 'pointer' reference.").

We know that because of what Defendants *didn't* do to change section 1902.4(c)(2)(xi).

Most obviously, they left in the reference to the OSH Act. If Defendants were simply changing the specific amounts for civil penalties that state plans must match, leaving "*in the Act*" in section 1902.4(c)(2)(xi) makes no sense. Why would Defendants point to two different penalty amounts if state plans had to have their penalties match a specific one (and only that one) of those two amounts?

Speaking of penalties "in the Act," two additional points stand out. First, South Carolina's civil penalties do match the penalties in the Act. *Compare* S.C. Code Ann. § 41-15-320, *with* 29 U.S.C. § 666. The State Plan therefore complies with section 1902.4(c)(2)(xi)'s plain language.

Second, the OSH Act's 1990-increased penalties remain in the United States Code. Congress has increased the *federal* penalties through the 2015 Federal Penalties Act. Plaintiffs don't challenge that. There is, however, something wrong with having the original penalties still in the Code. Due process requires the "opportunity to know what the law is." *Opati v. Republic of Sudan*, 590 U.S. 418, 425 (2020). Anyone should be able to pick up a current copy of the Code, read it, and know the law. No one should have to wonder whether the Code's plain language is, in fact, the law. No one should have to search the more than 100,000 pages of last year's Federal Register to discover that the law is actually not what the Code says.

Returning to Count Six and Defendants' unlawful amendment of section 1902.4(c)(2)(xi), Defendants also left "such as"—that nonexclusive term, *see supra* Part I.B.—in the regulation. If state civil penalties must match the federal civil penalties in section 1903.15(d), leaving "such as" in section 1902.4(c)(2)(xi) is illogical. That phrase indicates that a state plan has options of what its civil penalties could be. But if state plans do not have options (as Defendants claim), leaving the phrase "such as" in the regulation only creates confusion for the state plans.

Ultimately, "in the Act" and "such as" remaining in section 1902.4(c)(2)(xi) indicates that

Defendants must have known that the 2015 Federal Penalties Act did not give them implicit authority to start revising regulations like section 1902.4(c)(2)(xi). They should not be allowed to slip section 1903.15(d) into section 1902.4(c)(2)(xi) to accomplish their goal of forcing States to increase their penalties. This amendment therefore exceeded Defendant's "statutory jurisdiction[ and] authority" and was done "without observance of the procedure required by law," so this change to section 1902.4(c)(2)(xi) should be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2)(C), (D).

## <u>CONCLUSION</u>

The Court should grant Plaintiffs' Motion for Summary Judgment and (1) declare that section 667(c)(2), section 1902.4(c)(2)(xi), and section 1902.37(b)(12) do not require state civil penalties to be equal to, if not greater than, federal civil penalties; (2) declare that the 2016 Interim Final Rule's mandate on state civil penalties violated the Administrative Procedure Act; (3) declare that the 2016 Interim Final Rule unlawfully amended section 1902.4(c)(2)(xi); and (4) enjoin Defendants from attempting to enforce any mandate on the State Plan's civil penalties or take any action against the State Plan in any way related to, because of, or motivated by the State Plan having civil penalties that do not match federal civil penalties.

Respectfully submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Chief Deputy Legal Counsel &*
*Senior Litigation Counsel*
Erica W. Shedd (Fed. Bar No. 13206)
*Deputy Legal Counsel*
Tyra S. McBride (Fed. Bar No. 13324)
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

s/Susan M. Boone
Susan M. Boone (Fed Bar No. 7634)
Robert E. Horner (Fed Bar No. 7872)
S.C. Dep't of Labor, Licensing & Regulation
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
susan.boone@llr.sc.gov
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor, Licensing &*
*Regulation*

June 20, 2025
Columbia, South Carolina