IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Henry McMaster, *in his official capacity as Governor of the State of South Carolina*, and South Carolina Department of Labor, Licensing, & Regulation,<br><br>      Plaintiffs,<br><br>v.<br><br>United States Department of Labor; Lori Chavez-DeRemer, *in her official capacity as Secretary of Labor*; Occupational Safety and Health Administration; and Douglas Parker, *in his official capacity as Assistant Secretary for Occupational Safety and Health*,<br><br>      Defendants. | Case No. 3:23-cv-01038-SAL<br><br><br>**ORDER** |

  This matter is before the court on the motion to dismiss filed by the United States Department of Labor (the "DOL"), Lori Chavez-DeRemer,[1] the Occupational Safety and Health Administration ("OSHA"), and Douglas Parker (collectively, "Defendants"). [ECF No. 35.] Governor Henry McMaster ("Governor McMaster") and the South Carolina Department of Labor, Licensing, & Regulation (collectively, "Plaintiffs") oppose the motion, ECF No. 36, and Defendants have replied, ECF No. 37.

**I. Background**

  This administrative matter arises out of the DOL and OSHA's interpretation of federal law to require South Carolina state OSHA plan penalties to match federal penalty amounts.

---

[1] Secretary Chavez-DeRemer is automatically substituted as a defendant in place of former Acting Secretary Julie A. Su under Fed. R. Civ. P. 25(d).

A.     **Federal OSHA Statutory and Regulatory Scheme and the South Carolina State Plan**

In 1970, Congress passed the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. §§ 651 *et seq*. to ensure "safe and healthful working conditions" across the country. Under the OSH Act, a state can either allow the federal government to regulate workplace safety standards in the state directly, or it can submit a state-specific plan for OSHA approval. *See* 29 U.S.C. § 667(b); 29 C.F.R. §§ 1902.1 *et seq.* South Carolina administers its own plan (the "State Plan").

To maintain OSHA approval, state plan standards must be "at least as effective" as federal standards "in providing safe and healthful employment and places of employment." 29 U.S.C. § 667(c)(2). In analyzing whether a state plan meets this "at least as effective" standard, OSHA measures the plan's "alternative standards, procedures, criteria, and rules . . . against" various "indices of effectiveness." 29 C.F.R. § 1902.4.

The OSH Act imposes civil and criminal penalties for violating its standards. 29 U.S.C. § 666. Congress amended those penalties in 1990. [ECF No. 1 ¶ 18.] The State Plan also includes civil enforcement penalties in the amounts of $70,000 and $7,000 depending on the type of violation. [ECF No. 1 ¶ 40; S.C. Code Ann. § 41-15-320.] These civil penalties match those in the OSH Act. *See* S.C. Code Ann. § 41-15-320; 29 U.S.C. § 666. The State Plan penalty amounts have not changed since the OSH Act amounts were last amended in 1990.

In 2015, Congress passed the Federal Civil Penalties Inflation Adjustment Act Improvements Act (the "2015 Federal Penalties Act"), 28 U.S.C. § 2461 note (Federal Civil Penalties Inflation Adjustment Act of 1990). The 2015 Federal Penalties Act required OSHA to (1) make an initial catch-up inflation adjustment to federal civil penalty amounts "through an interim final rulemaking," which OSHA did on July 1, 2016, 81 Fed. Reg. 43430 (July 1, 2016) (the "2016 IFR"), and then to (2) annually adjust federal civil penalties for inflation, 28 U.S.C. § 2461 note,

which OSHA has done since 2017. [ECF No. 1 ¶ 22.] These inflation adjustments are exempt from notice and comment under the Administrative Procedure Act ("APA"). *See* 28 U.S.C. § 2461 note.[2]

The 2016 IFR also "amends" one of the OSHA regulatory indices of effectiveness by adding a reference to OSHA's annual maximum civil penalty adjustment at 29 C.F.R. § 1903.15(d). *See* 81 Fed. Reg. at 43452. Prior OSHA regulations provided that OSHA considers whether the state plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those set forth in the Act." The 2016 IFR amendment, however, adds that OSHA will analyze state-plan effectiveness by reference to "standards and orders, such as those set forth in the Act, *and in 29 C.F.R. 1903.15(d)*." *See* 29 C.F.R. § 1902.4(c)(2)(xi) (emphasis added); *see also* 36 Fed. Reg. 20751, 20754 (Oct. 29, 1971) (codified at 29 C.F.R. § 1902.4(c)(2)(xi)) (original language).

The 2016 IFR further states that "OSHA's penalty increases under the Inflation Adjustment Act will necessitate an increase to the maximum and minimum penalty amounts required by states that administer their own occupational safety and health programs as well." 81 Fed. Reg. at 43446 (2016 catch up adjustment). Every annual adjustment since January 18, 2017, has likewise included the following statement: "[state plans] are required to increase their penalties in alignment with OSHA's penalty increases to maintain at least as effective penalty levels." *See* ECF No. 1 ¶ 22 (citing 88 Fed. Reg. 2210, 2213 (Jan. 13, 2023) (2023 adjustment); 87 Fed. Reg. 2328, 2332 (Jan. 14, 2022) ("2022 Adjustment"); 86 Fed. Reg. 2964, 2966 (Jan. 14, 2021) (2021 adjustment); 85 Fed. Reg. 2292, 2295 (Jan. 15, 2020) (2020 adjustment); 84 Fed. Reg. 213, 215 (Jan. 23, 2019)

---

[2] Pursuant to 5 U.S.C. § 553, rules are generally proposed for public comment, commented on, revised, and then published by the relevant federal agency as a final rule. Whereas an interim final rule is effective immediately upon publication, without the prior comment period.

3

(2019 adjustment); 83 Fed. Reg. 7, 9 (Jan. 2, 2018) (2018 adjustment); 82 Fed. Reg. 5373, 5378 (Jan. 18, 2017) (2017 adjustment)).[3]

### B. Plaintiffs' Prior Challenge to the 2022 Adjustment Penalty-Matching Requirement

Plaintiffs previously brought a related lawsuit ("*McMaster I*") challenging the "requirement" that the State Plan enforce or impose civil penalties identical to the federal civil penalties in the 2022 Adjustment or any previous annual inflation adjustments. *See* Order at 5–6, *McMaster v. U.S. Dep't of Lab.*, No. 3:22-cv-02603-SAL (D.S.C. Mar. 2, 2023). They alleged that OSHA had historically not enforced this matching requirement but that recent events indicated OSHA was inclined to start enforcing the mandate going forward. *Id.* at 5.

In support of their challenge, Plaintiffs first pointed to OSHA's 2021 Federal Annual Monitoring Evaluation of the South Carolina State Plan, which was published in August 2022 and covers an evaluation period of October 1, 2020, through September 30, 2021 (the "2021 FAME Report"). *Id.* In the 2021 FAME Report, OSHA included a "finding" that the State Plan "has failed to adopt OSHA's initial FY 2016 maximum and minimum penalty increase and subsequent annual penalty amount increases." *Id.* According to Plaintiffs, this was concerning because a "finding" is the first step in OSHA's state-plan revocation process. *Id.*

Second, they pointed to OSHA's recent dealings with the state of Arizona, asserting that OSHA had begun the process to revoke Arizona's state plan "based in part on Arizona's refusal to have its civil penalties match the federal ones." *Id.* Plaintiffs feared South Carolina would face similar consequences. *Id.*

---

[3] The court takes judicial notice that the 2024–2025 adjustments include this same alignment directive. *See* 89 Fed. Reg. 1810, 1813 (Jan. 11, 2024) (2024 adjustment); 90 Fed. Reg. 1854, 1857 (Jan. 10, 2025) (2025 adjustment).

4

Finally, OSHA had directed state plans to indicate by March 15, 2022, whether they intended to increase their civil penalties to match the federal penalties by July 15, 2022. *Id.* South Carolina officials responded that changes to the State Plan's civil penalties could be made only through legislative action. *Id.* The South Carolina General Assembly did not pass legislation altering those penalties during the 2022 legislative session. *Id.*

Concerned OSHA was on the brink of taking steps to revoke the State Plan, Plaintiffs sued Defendants on August 9, 2022, seeking declarations that the 2022 Adjustment violated the APA. *Id.* at 6. But rather than challenging the adjustment to the federal penalties itself, Plaintiffs challenged the "requirement" that state plans increase their penalties to align with OSHA's penalty increases. *Id.* Plaintiffs also sought permanent and preliminary injunctive relief, again based on the 2022 Adjustment's "requirement" that the State Plan enforce or impose civil penalties identical to the federal civil penalties in the 2022 Adjustment or any previous annual inflation adjustments. *Id.*

Defendants moved to dismiss, arguing *inter alia* that the court lacked jurisdiction over Plaintiffs' claims because the portion of the 2022 Adjustments that Plaintiffs challenged—the "mandate," not the adjustment to the penalties itself—was not "agency action" under the APA. *Id.* The court agreed and dismissed Plaintiffs' claims without prejudice. *See id.* at 7–10.

C.    **The Instant Lawsuit**

Plaintiffs filed this suit on March 14, 2023. [ECF No. 1.] The complaint includes eight counts. Counts I, II, and III seek declarations that 29 U.S.C. § 667(c)(2), 29 C.F.R. § 1902.4(c)(2)(xi), and 29 C.F.R. § 1902.37(b)(12), respectively, do not require state civil penalties to match federal civil penalties. *Id.* ¶¶ 50–63. Counts IV–VI challenge the 2016 IFR's amendment to OSHA's regulation, 29 C.F.R. § 1902.4(c)(2)(xi), as arbitrary and capricious (Count IV), as

violative of Executive Order 13,132 (Count V), and for failure to comply with the APA's notice-and-comment rulemaking procedures (Count VI). *Id.* ¶¶ 64–85. In Counts VII and VIII, Plaintiffs renew their claim that OSHA's 2016–2023 annual adjustments violated the APA (Count VII) and ask for a permanent injunction (Count VIII). *See id.* ¶¶ 86–96. Defendants move to dismiss all eight counts on jurisdictional grounds and for failure to state a claim upon which relief may be granted. [ECF No. 35.]

**II.     Legal Standard**

    **A.     Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The court need not, however, accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." *Id.* at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss, a court can consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss,

as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

    **B.**    **Rule 12(b)(1)**

A defendant mounting a "facial challenge" to the court's jurisdiction must show the complaint lacks facts to support subject-matter jurisdiction. *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). In this context, courts apply the same standard as under Rule 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In other words, the court accepts the facts alleged as true and denies the motion if the complaint alleges sufficient facts to support jurisdiction. *Id.*

**III.**    **Discussion**

    **A.**    **Counts I–III and V Are Dismissed for Lack of an Independently Viable Claim.**

        **1.**    **Count V**

There is generally no private right of action to enforce obligations imposed on executive branch officials by executive orders. *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995). Unless an executive order is issued pursuant to a statutory mandate or delegation of congressional authority—it is not privately enforceable. *Id.*

Count V challenges the 2016 IFR on the ground that it "does not give sufficient consideration to federalism or the States' roles as laboratories of democracy" in violation of Executive Order 13,132. *See* ECF No. 1 ¶ 77. But the order itself states it is intended only to improve the internal management of the executive branch and "is not intended to create any right or benefit, substantive or procedural, enforceable at law." 64 Fed. Reg. 43255, 43259 (Aug. 10, 1999) ("Judicial Review").

Plaintiffs provide no reason why Count V should not be dismissed. Therefore, consistent with the above authority, the court grants Defendants' motion to dismiss Count V for lack of an independently viable claim.

### 2.     Counts I–III

Counts I–III seek declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. A claim under the DJA must be accompanied by an independently viable substantive claim. *See, e.g.*, *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 51–52 (4th Cir. 2016). Defendants argue that Plaintiffs requests for declaratory relief must be dismissed because they have no independently viable substantive claims. *See* ECF No. 35 at 29.

Plaintiffs counter that Counts I–III are not brought "solely" under the DJA but also under the APA. *See* ECF No. 36 at 23. In response, Defendants assert that Counts I–III do not address "agency action." *See* ECF No. 37 at 22. Since those counts "simply ask the Court to opine on one statute and two regulations," they argue "it would make no sense to construe them as brought under the APA." *Id.*[4] And since they are not APA claims, Defendants reason that they can be construed only in one of two plausible ways:

> First, the Court could conceive of them as prayers for relief, meant to attend Plaintiffs' *actual* APA claims (Counts IV and VI). . . . In that case, the Court should dismiss Counts I–III because they are not true claims. Alternatively, the Court could take Counts I–III as they appear: stand-alone claims under the [DJA]. In that case, they fail . . . because [DJA] claims cannot be brought in a vacuum . . . .

*Id.*

---

[4] Defendants elaborate that if "Plaintiffs mean to suggest that Counts II and III are challenges to the *promulgation of* the terms 'effective' or 'such as' in 29 C.F.R. § 1902.4(c)(2)(xi), then Plaintiffs are woefully out of time. Those terms were introduced more than fifty years ago . . . ." *Id.* Defendants are correct on this point.

The court agrees with this dichotomy. Under the APA, "[a] person suffering legal wrong *because of agency action*, or adversely affected or aggrieved *by agency action* within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (emphasis added). Counts I–III ask the court to interpret a statute's meaning and two regulations—but they never mention the APA, nor do they identify any agency action which is being challenged. *See* ECF No. 1 ¶¶ 50–63.

Still, Plaintiffs maintain they have the right to challenge Defendants' interpretation of these provisions as "not in accordance with law." [ECF No. 36 at 23.] Under 5 U.S.C. § 706, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." The court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." *Id.* § 706(2)(A).

According to Plaintiffs, the court "necessarily has to" decide the meaning of the relevant provisions to determine whether Defendants' interpretation—and therefore the 2016 IFR—is "in accordance with law." [ECF No. 36 at 23.] Plaintiffs may be correct that the court must interpret certain language to resolve a valid APA claim. But that does not mean there is an independent right of action to declare the meaning of the language.

Section 706 defines the *scope* of review under the APA—it does not determine which actions are, in the first place, reviewable. Another statute does that. Indeed, 5 U.S.C. § 704 provides that only "agency actions" are reviewable under the APA, and even then, only (A) agency actions made reviewable by statute and (B) final agency actions for which there is no other adequate judicial remedy. Thus, the scope-of-review provisions in Section 706 are meaningless without a *reviewabl*e *agency action* to which they can be applied.

9

Because Plaintiffs identify no reviewable agency action in Counts I–III, those Counts are not actionable under the APA. And without an independently viable cause of action, they are also not actionable under the DJA. For these reasons, Defendants' motion to dismiss Counts I–III is granted.[5]

### B.  Counts IV–VI Are Time-Barred and Not Subject to Equitable Tolling.

#### 1.  Statute of Limitations for APA Claims

The default statute of limitations for a suit against the United States is six years, meaning the complaint must be filed within six years after the right of action accrues. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 804 (2024); 28 U.S.C. § 2401(a). Recently, in *Corner Post*, the Supreme Court explained that "[a] claim accrues when the plaintiff has the right to assert it in court—and in the case of the APA, that is when the plaintiff is injured by final agency action." *Id.*

The Fourth Circuit had previously held that the statute of limitations for "facial" challenges to agency action (like those asserted by Plaintiffs in Counts IV–VI) begins to run when the agency first publishes the challenged regulation. *See, e.g.*, *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 681–82 (4th Cir. 2020). But the *Corner Post* decision clarified that "[a]n APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run *until she is injured.*" 603 U.S. at 809 (emphasis added). Thus, both a final agency action and a resulting injury must exist for the statute to start running.

---

[5] Since Counts I–III fail for want of an independently viable claim, the court need not reach the question of whether *Thunder Basin* precludes judicial review. *See* ECF No. 35 at 21–28 (discussing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)).

The parties agree that the 2016 IFR is a final agency action, but they disagree about the point in time at which Plaintiffs suffered their alleged injury. According to Defendants, to the extent that Plaintiffs can allege injury, their injury occurred as soon as the challenged regulation went into effect because that was when South Carolina first became subject to the allegedly improper rule. *See* ECF No. 35 at 19. Plaintiffs, on the other hand, argue that they suffered no injury at that time because no enforcement had yet occurred. *See* ECF No. 36 at 9.

Defendants respond that if injury only occurs upon regulatory enforcement—then no claim has yet accrued as OSHA has yet to take any such action. *See* ECF No. 35 at 19. Plaintiffs accuse Defendants of downplaying OSHA's finding in the 2021 FAME Report, which they argue "created a credible threat of enforcement" sufficient to constitute an Article III injury. ECF No. 36 at 10 (citing *MedImmune, Inc. v. Geventech, Inc.*, 549 U.S. 118, 128–29 (2007)).

So the court must decide whether the injury occurred in 2016, when the IFR went into effect, or in 2021, when OSHA made a finding in the FAME Report. The answer determines when Plaintiffs' causes of action accrued and thus when the statute of limitations began to run.

Under *Corner Post*, Plaintiffs' claims accrued as soon as they had a "complete and present cause of action"—*i.e.*, when they had the right to file suit and obtain relief. *Corner Post*, 603 U.S. at 809 (quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)). Of course, the right to sue requires an injury in fact. Generally, mere "fear[] of hypothetical future harm that is not certainly impending" is not an injury in fact for purposes of Article III standing. *See Murthy v. Missouri*, 603 U.S. 43, 46 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). At the same time, the Supreme Court has recognized that

> where threatened action by *government* is concerned, . . . a plaintiff [need not] expose himself to liability before bringing suit to challenge the basis for the threat— for example, the constitutionality of a law threatened to be enforced. The plaintiff's

11

>own action (or inaction) in failing to violate the law eliminates the imminent threat
>of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*MedImmune, Inc.*, 549 U.S. at 128–29.

Plaintiffs assert that before the 2021 FAME Report, any potential injury was hypothetical (as in *Murthy*) because there was no genuine threat of enforcement (as in *MedImmune, Inc.*). *See* ECF No. 36 at 9–10. But the court is unpersuaded that the 2021 FAME Report created any more credible or imminent threat of enforcement than the 2016 IFR already had.

Plaintiffs claim a FAME Report finding is typically the first step in revoking a state plan, and there was no real threat of revocation until Defendants took that first step. *Id.* They note that OSHA initiated revocation proceedings against Arizona after making a similar finding in Arizona's FAME Report. *Id.* at 10 n.4. Defendants do not dispute this but argue that a FAME Report finding is not a "necessary precursor to revocation; *i.e.*, there is [] no legal connection between a FAME Report finding and the revocation of a State plan's final approval." [ECF No. 37 at 11 n.6.] They further elaborate that "Arizona's proposed revocation was later withdrawn, undercutting Plaintiffs' assertion that revocation is certain to follow a FAME Report finding." *Id.*

Plaintiffs cite the District of Utah case *Brown v. Herbert* for the proposition that, "when a statute has been on the books for a significant time but has not been regularly enforced, plaintiffs must usually show that something beyond the mere existence of the statute creates a credible threat of prosecution." 850 F. Supp. 2d 1240, 1248 (D. Utah 2012). But the inverse is also true: "Where a statute is recently enacted and is not moribund, its existence alone may create a threat that is credible enough to create standing." *Id.* A statute is moribund where it "has rested in dormancy without any historical prosecutions"—not where it is "so new that it has yet to be fully enforced." *See Hoffman v. Hunt*, 845 F. Supp. 340, 346–47 (W.D.N.C. 1994).

12

To the extent that Plaintiffs face a credible threat of enforcement sufficient to constitute an injury, that threat has existed since the passage of the 2016 IFR. And the finding in the 2021 FAME Report did not change the nature of that threat. Accordingly, the court finds that either (A) Plaintiffs still face no credible threat and thus no injury, or (B) they were injured in 2016. Either way, Plaintiffs' claims must be dismissed for lack standing or as untimely.

### 2. Equitable Tolling

Even if their claims are otherwise time-barred by the statute of limitations, Plaintiffs assert that the time limit in 28 U.S.C. § 2401(a) is a claim-processing rule subject to equitable tolling. [ECF No. 36 at 11.] They advance two reasons why equitable tolling should apply here. *See id.* at 11–15.

#### i. *Defective Pleading*

Equitable tolling may be permitted when a plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Plaintiffs argue *McMaster I* tolled the limitations period because they filed suit before the limitations period ran. *See* ECF No. 36 at 11–13. But again, *McMaster I* was dismissed after the court determined that Plaintiffs could not challenge the 2022 Adjustment because (unlike the 2016 IFR) it was not a "final rule." *See id.*

Plaintiffs argue they "simply challenged the wrong promulgation from Defendants, mistakenly (it turned out) assigning too much weight to Defendants' own assertion that the 2022 Adjustment was a 'final rule[.]'" *Id.* at 13. They urge this mistake rendered their pleading from *McMaster I* "defective" such that equitable tolling should apply.

Defendants disagree. They claim the cases Plaintiffs cite in support of their "defective pleading" theory do not apply—and, unlike the plaintiffs in those cases, "Plaintiffs did not file in

13

the wrong court, name the wrong agency, or cite the wrong statute." ECF No. 37 at 12–13. Instead, they argue, "[Plaintiffs] consciously chose *not* to challenge the 2016 IFR and refused to add such claims even after Defendants invited them to. That 'neglect,' even if it were excusable, does not warrant equitable tolling." *Id.*

The court agrees—Plaintiffs made a strategic choice in *McMaster I* not to challenge the 2016 IFR, and that decision does not qualify for equitable tolling under the defective pleading doctrine.

### ii.    *Adversary Misconduct*

Equitable tolling has also been permitted "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. On this point, Plaintiffs argue that "[y]ears of inaction led [them] (and other States) to believe that Defendants were not actually going to enforce the mandate." [ECF No. 36 at 14.] Even if Defendants did not intend to trick them, Plaintiffs contend that "their inaction gave the distinct impression to many States" that failure to increase state civil penalties would not threaten a state plan's viability. *Id.*

Defendants maintain there is no evidence they "induced, tricked, or lulled" Plaintiffs into sitting on their rights, ECF No. 37 at 13 (quotations omitted), and the court agrees. Plaintiffs drew an incorrect conclusion from Defendants' lack of action, but that is not enough. The court finds no basis for equitable tolling.

### C.    **Count VII is Dismissed for the Same Reasons as in *McMaster I*.**

The claims in Count VII are largely identical to those asserted in *McMaster I*. Accordingly, Defendants urge the court to dismiss Plaintiffs' challenge to the DOL's annual adjustments for failure to challenge an "agency action," just as it did the first time around. [ECF No. 35 at 15.]

Plaintiffs say they included Count VII to ensure that—if they prevail on their other claims—Defendants will be precluded from using any subsequent adjustments as a basis to force the State Plan to match federal penalty amounts. ECF No. 36 at 24. But since Plaintiffs cannot prevail on any of their other claims, Count VII fails as it did in *McMaster I*. *See* Order at 7–10, *McMaster v. U.S. Dep't of Lab.*, No. 3:22-cv-02603-SAL (D.S.C. Mar. 2, 2023).

### D. Count VIII is Dismissed as Plaintiffs Have Established No Basis for Injunctive Relief.

According to Defendants, Count VIII is best viewed as a prayer for relief and not an independent claim. *See* ECF No. 35 at 29. But even construed as its own, independent claim, Defendants argue Count VIII fails for the same reasons as Counts I–III: Plaintiffs have "no viable claims in which to ground an injunctive remedy." *Id.* Plaintiffs do not address this point in their response.

The court agrees with Defendants. Without any viable substantive claims, Plaintiffs are not entitled to the relief requested in Count VIII and that Count is therefore dismissed.

### IV.  Conclusion

For the reasons above, the court **GRANTS** Defendants' motion, ECF No. 35, and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' pending motion for summary judgment, ECF No. 39, is **TERMINATED AS MOOT**.

**IT IS SO ORDERED.**

July 21, 2025                                        Sherri A. Lydon
Columbia, South Carolina                             United States District Judge